## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIE GROSS, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-4871** |
| **DARREL VANNOY, WARDEN** | **SECTION "A"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Willie Gross, Jr. ("Gross"), is a convicted inmate incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.[2]  In 2008, Gross and co-defendant Calvin King were initially indicted by a Grand Jury in Jefferson Parish for aggravated battery, second degree kidnapping, and theft. A hearing was held on September 29, 2008, after which the state district court denied the Gross and King's motions to suppress evidence, identifications, and statements.[3]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 4.

[3] St. Rec. Vol. 14 of 20, Hearing Transcript, 9/29/08.

At a hearing on August 30, 2010, the state district court confirmed its ruling.[4]  A trial was never held on those charges.

On February 10, 2011, Gross and co-defendant King were indicted for one count of second degree murder and one count of armed robbery based on the same events.[5]  Gross and King both entered pleas of not guilty in the case.[6]

The record reflects that, on November 2, 2007, Marie Abreu and Javier Sanchez, her boyfriend, lived together at a Metairie apartment.[7]  Abreu, who was home alone that evening, answered the door after hearing a knock.  A man said something in English about a Mustang and the police.  Abreu, who is Hispanic, did not understand the man so she closed the door and retrieved her car keys and cell phone.  When she reopened the door, she yelled when she saw three men with handguns.  The men pointed their guns at her head, told her to be quiet, and they all went inside the apartment.

The men sat Abreu on the sofa and then began searching the apartment.  Two men went upstairs while the third man was stationed by the door.  The men asked Abreu where her boyfriend was and told her they were looking for two kilograms of cocaine.  Abreu, despite knowing that Sanchez had gone to return movies and was then getting food at Popeye's Chicken, told the men

---

[4]St. Rec. Vol. 14 of 20, Hearing Transcript, 8/30/13.

[5]St. Rec. Vol. 1 of 20, Grand Jury Return, 2/10/11; Bill of Indictment, 2/10/11.

[6]St. Rec. Vol. 1 of 20, Minute Entry, 2/11/11.

[7]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Gross*, 110 So.3d 1173 (La. App. 5th Cir. 2013); St. Rec. Vol. 3 of 20, 5th Cir. Opinion, 12-KA-73 C/W 12-KH-826, 2/21/13.

she did not know where Sanchez was.  At some point, two men took Abreu upstairs to continue the search.

While the men were searching, Abreu attempted to call 911 and Sanchez, but the calls did not go through.  One of the men seized her cellphone and tied her to the bed with duct tape.  Abreu yelled because the tape was causing her hands to swell so one of the men removed the tape.  Gross then used a telephone cord and a belt to tie up Abreu.  The men took $9,500.00 that they found in a briefcase in the bedroom and $3,000 worth of jewelry.

Abreu heard Sanchez's car alarm indicating that he had returned and then heard him enter the apartment and say that she had a bad habit of not answering the phone.  Abreu next heard a sound like a bottle or a glass fall onto the floor.  Within seconds, she heard the car alarm again and was able to move to a window.  Abreu saw Sanchez and the men leave in Sanchez's black Ford Expedition.  Abreu saw Sanchez in the back seat with one man on each side of him and someone in the driver's seat.  After they drove off in the car, Abreu untied her legs and went to look for help.

She initially drove her Mustang to Bud's Broiler, where she worked, and then to the Harvard Street home of Sanchez's friend, Rene Izaguirre.  She hoped that Izaguirre would have some information as to Sanchez's location.  She blew the vehicle's horn when she was outside of Izaguirre's house, but no one came outside.  Abreu returned to Bud's Broiler and found a police officer on the premises.  She attempted to tell him what happened, but he did not understand her.  She returned to the apartment to get her dog and some clothes.  At that time, she saw the suspects' truck, but Sanchez's Expedition was not in the parking lot.  She left the apartment again, closing the door behind her.

Abreu then returned to Bud's Broiler for a third time and told Deputy Christopher Bassil of the Jefferson Parish Sheriff's Office what happened and asked him to return with her to the apartment. According to Deputy Bassil, Abreu seemed frightened and panicked and her wrists were red. Their communication was limited due to a language barrier, but she was able to tell Bassil that something happened to her boyfriend at the apartment across the street. Bassil accompanied Abreu back to her apartment. When they arrived at the apartment building, the suspects' vehicle was gone and the door to the apartment was open.

Bassil found Popeye's chicken that appeared to have been dropped in the doorway and a soda was spewed across the tile floor. The apartment had been ransacked as if someone had been looking for something. After an interpreter arrived, Bassil was able to learn that three black males entered the apartment, restrained Abreu, and searched for two kilograms of cocaine. According to Bassil, Abreu told him that when she was restrained upstairs, she heard Sanchez arrive and say "why aren't you answering the phone?" followed by "Where's my wife?" Abreu told him that she heard a scuffle and the door close. Abreu advised that money, jewelry, and a computer were taken.

Detective Frank Renaudin of the Criminal Investigations Bureau of the Jefferson Parish Sheriff's Office was the first detective to arrive at the apartment and assumed the role of lead investigator. At that time, Abreu was crying and appeared "terrified" and "hysterical." She had abrasions to her wrists and from her calves down, which she attributed to being taped up and bound by a telephone cord and a belt. Abreu, through a deputy who was fluent in Spanish, told Renaudin that three armed black men had invaded the apartment, taken her cellphone, a 9 mm pistol and cash, and abducted Sanchez.

Abreu consented to a search of the apartment. Law enforcement recovered drug paraphernalia and white powdery residue from the apartment. Pieces of duct tape which had

fingerprint evidence were recovered from the bed.  Law enforcement contacted Sanchez's cell phone carriers in an effort to activate GPS devices that may have been on his phone, but the cell phone providers would not cooperate.  Deputies went to the Harvard Avenue address in an attempt to make contact with someone, but no contact was ever made.

That same evening, Detective Kevin Burns of the New Orleans Police Department was notified of a homicide investigation and was dispatched to I-510 at the Lake Forest Boulevard exit in New Orleans.  On scene, there was the body of a male with a wound to his torso consistent with a gunshot wound.  Two spent 9 mm bullet casings, a cigarette, and a receipt from Popeye's Chicken that showed a time of 8:39 p.m., were recovered from the scene.  Surveillance video from Popeye's Chicken showed that Sanchez went through the drive-through alone at that time in a dark-colored or black SUV.

The New Orleans Police Department contacted the JPSO to advise that they had found a body on the side of the road at the I–510 exit in New Orleans East.  Abreu identified Sanchez from a picture taken at the morgue.

Abreu gave additional statements to the JPSO over the following days.  A fingerprint obtained from the duct tape was positively identified as belonging to co-defendant Calvin King. Abreu positively identified King as one of the assailants from a photographic lineup. Subsequently, another law enforcement agency provided Renaudin with information that Gross, who had close ties to King, fit the description of one of the suspects.  Abreu was shown a six-person lineup and identified Gross as another assailant.  Fingerprints that were recovered from a box of liquor in the apartment were identified as belonging to Gross.

Sanchez's vehicle, which had been burned, was located days later on Lynhuber in New Orleans near 4715 Francis Drive, a residence to which Gross had connections.  Ultimately, Abreu

was arrested for possession of drug paraphernalia and residual powder cocaine and held for a number of months.

Detective Renaudin obtained arrest warrants for King and Gross.  King was arrested and found with $1600 on his person.  Gross was arrested after a traffic stop in Chamber's County, Texas on December 4, 2007.  On December 5, 2007, Detective Renaudin and Sergeant Troy Bradberry drove to Antioch, Texas to get Gross and search his vehicle, which appeared to look like an unmarked police car.  They located New Orleans Police Department clothing, a badge, and a blue strobe light in the vehicle.  Renaudin advised Gross of his rights.  They drove Gross back to Jefferson Parish arriving at approximately midnight on December 6, 2007.  Upon their return, Gross advised that he wished to give a statement.  He was advised of his rights and initialed a right of arrestee form waiving them and gave a taped statement that was played for the jury at trial.

According to his statement, King contacted Gross and asked him to go with him and King's cousin "Ben" to get a shipment of cocaine.  The three men met at Gross's relative's house on Francis Drive in New Orleans East on November 2, 2007.  They drove to the victim's apartment in Gross's truck.  Gross knocked on the door while King and Ben waited behind a wall.  When Abreu opened the door, Gross told her he had hit her car.  When she came outside, King, who was armed with a 40 caliber Glock, and Ben, who had an Oozie type gun, escorted her back into the apartment.  Gross pulled his truck to the back and then entered the house.  They searched the house looking for money and drugs.  During the search, King brought Abreu upstairs and taped her to the bed using duct tape because she would not be quiet.  When Gross went upstairs, he saw Abreu crying and complaining that her blood was being cut off by the tape so he cut the tape off and tied her up loosely with a belt and an extension cord.

Gross heard Ben, who was downstairs, yell, "He in here. I got him." King and Gross went downstairs and found Sanchez with Ben. King asked Sanchez where the "dope" was and Sanchez initially claimed that he did not know where the drugs were. Eventually, Sanchez told King that the drugs were at a residence on Harvard Street. The men took money and a 9 millimeter gun from the residence. King and Ben put Sanchez in the Expedition and Gross got in the other truck and followed them to the house on Harvard Street. When they arrived at the Harvard Street residence, a Hispanic man was in the driveway, so they left. King said, "Let's go. We going take care of this business."

According to his statement, Gross followed King and Ben to New Orleans East, exited on Downman Road, and went back to his relative's house on Francis Drive while King and Ben continued on to New Orleans East. Approximately thirty minutes later, King and Ben met Gross at the Francis Drive residence. Neither Sanchez nor the Expedition were with them. King gave Gross $2,000.00 and said, "We handled that," which Gross interpreted to mean that they had killed Sanchez. Gross said King and he had discussed beforehand that they were going to go inside the apartment to retrieve the money and the drugs and would wait for Sanchez to come home. He claimed, however, that they did not discuss killing Sanchez.

Detective Regina Williams with the New Orleans Police Department questioned Gross twice at the Jefferson Parish Detective's Bureau on December 6, 2007. The first time Gross advised that he did not wish to make a statement. Williams returned when she was advised by the JPSO that Gross wanted to make a statement. According to Williams, Gross said that he, King and Ben went to the apartment to get cocaine and money. He admitted that they knocked on the door and told Abreu that they hit her vehicle. Gross further admitted that they were armed with guns, forced themselves into the residence, tied up Abreu, and searched the apartment for drugs.

According to Gross, they left with money.  Gross told Williams that that on the drive to New Orleans East, he got off at Downman Road while Ben and King kept going east on I-10 with Sanchez.  King and Ben later went to Gross's residence on Francis Street and told him that they had "taken care of" Sanchez.

Gross testified at trial and explained that he and King sold drugs together and that Sanchez and Izaguirre were suppliers.  Gross claimed to have attended a party with Sanchez and Abreu and that he had previously been to their apartment.  He claimed that on November 2, 2007, he and King went to Sanchez's apartment to buy four kilograms of cocaine for $84,000.00.  Izaguirre was present.  They weighed the cocaine which was packaged on the table.  Abreu began cooking it to increase its volume.  Sanchez left the apartment to get some "runners" who would pick up cars with secret compartments to transport the drugs.  After Abreu finished cooking the cocaine, they determined that it was half a kilogram short and began searching the apartment.  Abreu attempted to call someone on her phone and Izaguirre took her phone away.  When Abreu tried to run, King decided to tape her up.  Ultimately, Gross cut the tape off of Abreu and tied her up with a belt and a telephone cord.  In the meantime, King and Izaguirre worked out a deal.  Izaguirre released Abreu and told her to return $9000 of the money.  Abreu retrieved the money from upstairs and gave it to King.  Sanchez and two runners returned as King and Gross were preparing to leave.  Abreu, who was crying, spoke to Sanchez in Spanish.  Sanchez and Izaguirre were arguing when Gross and King left in King's Monte Carlo.  Gross went to his home in Baton Rouge.  The following day, he learned that there was a warrant out for his arrest so he went to Houston to "regroup." Gross claimed he had hired an attorney and was on his way to Louisiana to turn himself in when he was arrested in Texas.

Gross claimed that Renaudin and Bradberry would not allow him to sleep during the drive back to Louisiana. He claimed that Renaudin slapped him. He testified that they pulled the vehicle over, let him out and took off the shackles, and told him to run. Gross claimed that, when he refused to run, they placed him back into the vehicle, slapped him again, and called him derogatory names. Gross testified that when he was brought to the Jefferson Parish Detective Bureau, he was slapped, spit on and handcuffed to the floor. He claimed that his recorded statement was not true and that Renaudin, Bradberry and Williams told him what to say.

Gross filed numerous pro se pretrial motions.[8] The Louisiana Fifth Circuit granted Gross's writ applications and ordered the state trial court to rule on the motions at or before the beginning of trial if it had not already done so.[9] There is no record that any hearing regarding the motions was held.

Gross was tried by a jury on November 15 through 17, 2011, and was found guilty as charged.[10] On December 9, 2011, the Trial Court sentenced Gross to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence as to the second degree murder conviction, and forty-five years at hard labor as to the armed robbery conviction, both sentences to be served concurrently.[11]

---

[8] St. Rec. Vol. 1 of 20, Motion to Suppress Identification, 3/14/11 (dated 3/9/11); Defendant's Motion for Injunction, 3/14/11 (dated 3/10/11); Motion to Quash Indictment, 3/14/11 (dated 3/10/11); Memorandum in Support of Motion to Dismiss and Bar Prosecution, 6/15/11 (dated 6/12/11); Defendant's Submission of Questions to be Asked on Direct-Examination of Absent Defense Witness, 6/23/11 (dated 6/20/11); Defendant's Supplemental and Exhibits to Adopted Motion to Quash Indictment, 8/11/11 (dated 8/211); Defendant's Motion to Compel Suppress Identification, 8/17/11 (dated 8/14/11); St. Rec. Vol. 2 of 20, Petition for a Writ of Habeas Corpus, 9/15/11 (dated 9/13/11).

[9] St. Rec. Vol. 2 of 20, 5th Cir. Order, 11-K-1014, 10/27/11; 5th Cir. Order, 11-K-1015, 10/27/11.

[10] St. Rec. Vol. 2 of 20, Trial Minutes, 11/15/11; Trial Minutes 11/16/11; Trial Minutes, 11/17/11; Verdict, 11/17/11; St. Rec. Vol. 11 of 20, Trial Transcript, 11/15/11, Trial Transcript 11/16/11; St. Rec. Vol. 12 of 20, Trial Transcript (con't), 11/16/11; Trial Transcript, 11/17/11; St. Rec. Vol. 13 of 20, Trial Transcript (con't), 11/17/11.

[11] St. Rec. Vol. 2 of 20, Sentencing Minutes, 12/9/11; St. Rec. Vol. 13 of 20, Sentencing Transcript, 12/9/11.

On direct appeal, Gross's appellate counsel asserted two errors[12]: (1) the evidence was insufficient to sustain Gross's second degree murder conviction; and (2) the Trial Court erred in limiting the defense's presentation of their theory of defense.  Gross filed a pro se brief in which he asserted two errors[13]: (1) the Trial Court erred in denying his motion to suppress his statement; and (2) the Trial Court erred in failing to produce the transcript of the hearing during which some of his pro se pretrial motions were ruled upon and further erred in failing to rule on his remaining motions.

Gross sought to supplement the appellate record with a transcript from a hearing he alleged occurred on November 14, 2011, at which time his pro se motions were ruled on.[14]  The court reporter certified that nothing was taken in open court on November 14, 2011.[15]  The Louisiana Fifth Circuit denied Gross's related writ application finding that there was no basis to suspend the appeal as there was no transcript for the date specified.[16]  The Louisiana Fifth Circuit affirmed the convictions finding no merit in the issues raised.[17]

On October 25, 2013, the Louisiana Supreme Court denied Gross's related writ application without stated reasons.[18]  His conviction was final under federal law ninety (90) days later, on

---

[12]St. Rec. Vol. 2 of 20, Appeal Brief, 12-KA-0073, 3/30/12; St. Rec. Vol. 3 of 20, Appeal Brief (con't), 12-KA-0073, 3/30/12.

[13]St. Rec. Vol. 2 of 20, Pro Se Appeal Brief, 12-KA-0073, 10/19/12.

[14]St. Rec. Vol. 2 of 20, Motion to Supplement and for Leave to File an Amended Brief, 8/22/12.

[15]St. Rec. Vol. 2 of 20, Court Reporter Certification, 9/17/12.

[16]St. Rec. Vol. 2 of 20, 5th Cir. Opinion, 12-KH-747, 10/24/12.

[17]*State v. Gross*, 110 So. 3d 1173 (La. App. 5th Cir.  2013); St. Rec. Vol. 3 of 20, 5th Cir. Opinion, 12-KA-73, C/W 12-KH-826, 2/21/13.

[18]*State v. Gross*, 124 So. 3d 1091 (La. 2014); St. Rec. Vol. 17 of 20, La. S. Ct. Order, 2013-KO-0661,

January 23, 2014, when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On April 4, 2014, Gross submitted pro se to the Trial Court an application for post-conviction relief and brief in which he raised the following grounds for relief:[19] (1) the State knowingly and willfully seized and destroyed exculpatory evidence material to his defense; (2) his conviction was obtained in violation of double jeopardy; (3) the State withheld exculpatory evidence; (4) the State knowingly presented perjured testimony and false evidence at trial; (5) there was a variance between the indictment and the jury instructions; (6) the Trial Court gave an erroneous jury charge; (7) the Trial Court erred in denying the defense's request for the jury to view the crime scene; (8) he was denied the right to an adequate appeal when the Trial Court suppressed the transcript of a hearing that took place on November 14, 2011, during which his pro se pretrial motions were denied; (9) ineffective assistance of trial counsel in failing to file pretrial motions, investigate the case, make preparations for the jury to view the crime scene, and object to erroneous jury instructions; and (10) prosecutorial misconduct as a result of the prosecutor threatening and intimidating a defense witness. Gross filed a supplemental application in which he amended claim nine to include ineffective assistance of counsel in failing to raise the issue of

---

10/25/13; La. S. Ct. Application for Writ, 13 KO 661, 3/26/13 (dated 3/21/13).

[19]St. Rec. Vol. 3 of 20, Application for Post-Conviction Relief, 4/9/14 (dated 4/4/14); St. Rec. Vol. 4 of 20, Application for Post-Conviction Relief (con't), 4/9/14 (dated 4/4/14).     .

corpus delicti and raised the following additional grounds for relief[20]: (11) his conviction was obtained in violation of the constitution in light of newly discovered evidence from co-defendant King's trial which resulted in the grant of a new trial for King; and (12) the Trial Court erred in finding that the State proved the corpus delicti of the crime.

On July 28, 2014, the State filed a response claiming that claims one, two, five, six, seven, ten, eleven, and twelve were procedurally barred.[21]   Gross filed an opposition to the State's response.[22]   On August 15, 2014, the Trial Court found that claims one, two, five, six, seven, ten and twelve were procedurally barred and claim eleven failed to state a claim under La. Code Crim. P. art.928 and ordered the State to file a response addressing the merits of claims three, four, eight and nine.[23]

Gross sought writs and the Trial Court granted the State's request for a stay pending the writ disposition.[24]   On November 4, 2014, the Louisiana Fifth Circuit Court of Appeal affirmed the Trial Court's rulings that the claims were procedurally barred but remanded the case for the Trial Court to consider the merits of claim eleven.[25]   The Trial Court ordered the State to respond

---

[20] St. Rec. Vol. 4 of 20, Supplemental Application for Post-Conviction Relief, 4/28/14.

[21] St. Rec. Vol. 4 of 20, State's Procedural Objections to Willie Gross's Application for Post-Conviction Relief, 7/28/14; St. Rec. Vol. 5 of 20, State's Procedural Objections to Willie Gross's Application for Post-Conviction Relief (con't), 7/28/14

[22] Petitioner's Opposition to State's Procedural Objections to his Application for Post-Conviction Relief, 8/8/14.

[23] St. Rec. Vol. 5 of 20, Trial Court Order, 8/15/14.

[24] St. Rec. Vol. 5 of 20, State's Motion for Stay of Consideration of the Merits of Petitioner's Post-Conviction Application Pending the Finality of the Court's Rulings on the Respondent's Procedural Objections, 9/8/14; Trial Court Order, 9/11/14; Petitioner's Objection to State's Motion to Stay of Consideration of the Merits of Petitioner's Post Conviction Application and Notice of Intent to Appeal, 9/18/14 (postmarked 9/16/14); Trial Court Order, 9/25/14.

[25] St. Rec. Vol. 5 of 20, 5th Cir. Order, 14-KH-712, 11/4/14.

on the merits as to that claim.[26]  Both Gross and the State sought review from the Louisiana

Supreme Court.[27]  On June 1, 2015, the Louisiana Supreme Court denied relief and remanded the

case instructing the Trial Court to apply the minimum standard of relief in *State v. Pierre*, 125 So.

3d 403, 409 (La. 2013), in addressing claim eleven.[28]

In the interim, Gross amended claim nine for the second time to include a claim of

ineffective assistance of counsel for failing to object to structural error committed by the Trial

Court in instructing the jury.[29]  The State filed its response to the remaining claims on July 24,

2015.[30]  Gross filed a supplement to claim eleven and a traverse to the State's response.[31]

On February 17, 2016, the Trial Court found no merit to Gross's remaining claims.[32]  On

May 5, 2016, the Louisiana Fifth Circuit denied Gross's writ application finding no error in the

Trial Court's denial of Gross's application for post-conviction relief."[33]  On September 29, 2017,

the Louisiana Supreme Court denied Gross's related writ application finding he had failed to show

---

[26]St. Rec. Vol. 5 of 20, Trial Court Order, 11/6/14.

[27]St. Rec. Vol. 17 of 20, La. S. Ct. Writ Application, 14 KH 2580, 12/10/14; St. Rec. Vol. 18 of 20, La. S. Ct. Writ Application, 14 KP 2640, 12/18/14; St. Rec. Vol. 6 of 20, Supplement to State's Writ Application, 14 KP 2640, 6/2/15.

[28]*State v. Gross*, 171 So.3d 924 (La. 2015) (per curiam); St. Rec. Vol. 18 of 20, La. S. Ct. Order, 14-KP-2640, 6/1/15.

[29]St. Rec. Vol. 5 of 20, Motion to Amend Post Conviction Relief Application Claim #9, 1/29/15 (dated 1/24/15); Amendment to Claim #9 of P.C.R., 1/29/15; Trial Court Order, 2/6/15.

[30]St. Rec. Vol. 6 of 20, State's Response to Willie Gross's Application for Post-Conviction Relief, 8/24/15; St. Rec. Vol. 7 of 20, State's Response to Willie Gross's Application for Post Conviction Relief (con't), 8/24/15.

[31]St. Rec. Vol. 7 of 20, Supplement to Claim #11, 7/27/15 (postmarked 7/23/15); Petitioner's Traverse in Opposition to State's Response to his Application for Post Conviction Relief, 8/14/15 (dated 8/11/15).

[32]St. Rec. Vol. 7 of 20, Trial Court Order, 2/17/16.

[33]St. Rec. Vol. 7 of 20, 5th Cir. Order, 16-KH-159, 5/5/16; 5th Cir. Writ Application, 16-KH-159, 3/22/16 (dated 3/16/16).

he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984), and he failed to satisfy his post-conviction burden of proof as to his remaining claims citing La. Code Crim. P. art. 930.2 and *State v. Pierre*, 125 So.3d 403 (La. 2013).[34]

## II.    Federal Habeas Petition

On June 1, 2018, after correction of certain deficiencies, the clerk of this Court filed Gross's petition for federal habeas corpus relief in which he asserts the following grounds for relief[35]: (1) insufficient evidence supported his second degree murder conviction; (2) he is actually innocent and his conviction cannot stand in light of newly discovered evidence of Abreu's inconsistent testimony at King's trial; (3) newly discovered evidence that demonstrates that the detectives coerced Abreu to identify Gross as an assailant proves that he is actually innocent; (4) denial of the right to present a defense; (5) the Trial Court erred in admitting his involuntary statement and in failing to rule on some of his pretrial motions; (6) his convictions violate double jeopardy; (7) the State withheld exculpatory evidence; (8) the State knowingly presented perjured testimony and false evidence; (9) there was an unconstitutional variance between the indictment and the jury instructions; (10) erroneous jury instructions; (11) the Trial Court erred in denying the defense's request to allow the jury to view the crime scene; (12) he was denied the right to appellate review based on the alleged "suppression" of a hearing transcript; (13) ineffective assistance of counsel for failing to file pretrial motions, investigate the case, make arrangements for the jury to view the crime scene, object to jury instructions, and raise corpus delicti; (14) prosecutorial misconduct in

---

[34]*State ex rel. Gross v. State*, 227 So.3d 282 (La. 2017); St. Rec. Vol. 19 of 20, La. S. Ct. Order, 16-KH-1088, 9/29/17; La. S.Ct. Writ Application, 16 KH 1088, 6/13/16 (dated 6/2/16); St. Rec. Vol. 20 of 20, La. S. Ct. Writ Application, 16 KH 1088 (con't), 6/13/16 (dated 6/2/16).

[35]Rec. Doc. No. 4.

threatening a defense witness; and (15) jail officials violated his constitutional rights when they seized and destroyed his legal materials.

The State filed a response in opposition to the petition asserting that Gross timely filed his federal petition.[36]  The State asserts that seven claims are procedurally barred, and the remaining claims can be dismissed as meritless or not cognizable on federal habeas review.

## III.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[37] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on May 10, 2018.[38]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[36]Rec. Doc. No. 16.

[37]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[38]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of this Court docketed Gross's petition on May 14, 2018, and the case later was opened June 1, 2018 when Gross paid the filing fee.  Gross certified under penalty of perjury that he placed the original pleadings into the prison mail system on May 10, 2018.  Rec. Doc. No. 4-2, p. 221.  He has declared this to be the date on which he delivered the pleadings to prison officials for mailing.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Len*sing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

The State concedes Gross timely filed his federal petition and exhausted his claims. The State contends that seven claims are in procedural default and that Gross's remaining claims can be dismissed as meritless or not cognizable on federal habeas review.[39]

## IV.    Procedural Default (Claim Nos. 5 (in part), 6, 9, 10, 11, 14 and 15)

The State recognizes that seven issues raised by Gross are in procedural default, having been dismissed by the Louisiana Supreme Court as procedurally barred from review. These claims are the Trial Court failed to rule on some of his pro se pretrial motions, his convictions violate double jeopardy, there was a variance between the indictment and jury instructions, the jury instructions were erroneous, the Trial Court erred in denying the defense's request to view the crime scene, prosecutorial misconduct in threatening a defense witness, and the jail officials' destruction of Gross's legal materials violated his constitutional rights.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the

---

[39]Rec. Doc. No. 16.

case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

Gross raised on direct appeal his claim that the Trial Court failed to rule on some of his pro se pretrial motions. The Louisiana Fifth Circuit found that any pretrial motions that were not ruled on prior to trial were waived citing *State v. Alexander,* 740 So.2d 628 (La. App. 5th Cir. 1998). It further found that the Trial Court was not required to entertain the pro se motions as Gross was represented by counsel. The Louisiana Supreme Court denied relief without stated reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Gross raised in his application for post-conviction relief his claims that his convictions violated double jeopardy, there was a variance between the indictment and the jury instructions, the jury instructions were erroneous, the Trial Court erred in denying the defense's request to view the crime scene, the prosecutor threatened and intimidated a witness, and jail officials destroyed exculpatory evidence. The Trial Court found that Gross's double jeopardy claim as well as those claims relating to the Trial Court's denial of the defense's request for the jury to view the crime scene, and the prosecutor's alleged threatening and intimidation of a witness were procedurally barred by La. Code Crim. P. art. 930.4(C) for failure to raise the issues on appeal. The Trial Court found that Gross's claims relating to the jury instructions were procedurally barred by La. Code Crim. P. art. 930.4(B). The Trial Court found Gross's claim relating to the destruction of his legal

materials by the jail officials was procedurally barred by both La. Code Crim. P. arts. 930.4(A) and 930.4(B).

The Louisiana Fifth Circuit agreed with the Trial Court that all the claims were procedurally barred. In doing so, the Louisiana Fifth Circuit found that Gross's double jeopardy and jury instructions claims were procedurally barred by La. Code Crim. P. art.930.4(C). It found that Gross inexcusably failed to raise on appeal his claim that the prosecutor threatened a witness and the claim was therefore procedurally barred by La. Code Crim. P. art. 930.4(C). While it referred to art. 930.4(C), it specifically stated that it "agreed with the trial court that these claims are procedurally barred." As noted, the Trial Court specially referred to art. 930.4(B) in finding Gross's jury instruction claims procedurally barred. Finally, the Louisiana Fifth Circuit agreed with the Trial Court that Gross's claim that the jail officials destroyed his legal materials was barred by La. Code Crim. P. 930.4. The Louisiana Supreme Court denied writs without stated reasons. *See Ylst*, 501 U.S. at 802.

The Court must consider whether the bar to review relied upon by the Louisiana Supreme Court prohibits consideration of Gross's claims that the Trial Court erred in failing to rule on some of his pro se pretrial motions, his convictions violate double jeopardy, erroneous jury instructions, the Trial Court erred in refusing to allow the jurors from viewing the crime scene, the prosecutor threatened and intimidated a witness, and the jail officials destroyed his legal materials on federal habeas corpus review. As discussed above, for a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

### A.    <u>Independent and Adequate State Ground</u>

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).  The "independent and adequate state ground" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32, 111 S.Ct. 2546; *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263, 109 S.Ct. 1038; *Glover*, 128 F.3d at 902.  Federal review is barred even if the state court alternatively address the merits.  *See Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (citing *Harris*, 489 U.S. at 264 n.10, 109 S.Ct. 1038).

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural grounds that bars review of the claim.  *Amos*, 61 F.3d at 338.  The state-law ground may be a substantive rule dispositive of the case or a procedural bar to adjudication of the claim on the merits.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-82, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).  The question of the adequacy of a state procedural bar is itself a federal question.  *Beard v. Kindler*, 558 U.S. 53, 60, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820

(2002)).  To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Walker v. Martin*, 562 U.S. 307, 315-17, 131 S.Ct. 1120, 179 L.Ed.2d 62 (2011); *Glover*, 128 F.3d at 902.  A state procedural rule, however, "can be 'firmly established' and 'regularly followed,'—even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others."  *Beard*, 558 U.S. at 60, 130 S.Ct. 612 (citations omitted).

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999).  Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair.  *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAfee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar.  *Davis v. Johnson*, No.

00CV684–Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*, No. 99–0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (finding La. Code Crim. P. art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97–1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (finding art. 930.8 was not adequate to bar review because it was misapplied). It is not, however, within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03–2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing La. Code Crim. P. art. 930.3 as applied to ineffective assistance of counsel claim). Thus, where such foundation and basis does exist, as it does in the case of this issue, the bar must stand.

In this case, the Louisiana Fifth Circuit relied on *State v. Alexander* to find that Gross had not properly preserved for appeal the issue of the Trial Court's failure to rule on some of his pro se pretrial motions due to his failure to object to proceeding to trial without a ruling. Under Louisiana law, if a defendant fails to object to the trial court's failure to rule on a motion prior to trial, the motion is considered waived. *State v. Holmes*, 5 So.3d 42 (La. 2008); *State v. Clay*, 248 So.3d 665, 667 n. 2 (La. App. 5th Cir. 2018); *States v. Funes*, 87 So.3d 134, 135 n.3 (La. App. 5th Cir. 2012); *State v. Fletcher*, 836 So.2d 557, 559 (La. App. 5th Cir. 2002); *Alexander*, 720 So.2d at 86. This Louisiana procedural rule is independent and adequate to bar federal review of Gross's claim. *See Powell v.Hooper*, Civ. Action No. 17-21232017 WL 8786863, at *8 (E.D. La. Dec. 5, 2017), *report and recommendation adopted*, 2018 WL 1739210 (E.D. La. April 11, 2018).

The Louisiana Fifth Circuit approved the denial of relief of the other six claims based on state statutory rules to bar review of Gross's claims, citing La. Code Crim. P. arts. 930.4(B) and (C). Article 930.4(B) prohibits review of a claim that was known and inexcusably not raised in

the proceedings leading to the conviction. Article 930.4(C) similarly prohibits review of a claim that was inexcusably not pursued on direct appeal.

Under the circumstances of this case, the provisions of Article 930.4(B) and (C) are independent and adequate to bar federal review of Gross's claims. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is an independent and adequate state procedural rule); *Coleman v. Cain*, No. 07-3655, 2014 WL 348541, at *11 (E.D. La. Jan. 31, 2014) (Milazzo, J.) (Article 930.4(B) & (C)); *Johnson v. Ca*in, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (Lemelle, J.) (Article 930.4(C)); *Perez v. Cain*, No. 12-1331, 2012 WL 4815611, at *1 (E.D. La. Oct. 10, 2012) (Barbier, J.) (Article 930.4(C)); *see also, Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

The state courts' rulings were based on Louisiana law setting forth the procedural requirements for the preservation and presentation of post-conviction claims. *See, Fisher*, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue). The state courts' reasons for dismissal of Gross's claims were therefore independent of federal law and adequate to bar review of his claims in this federal habeas court.

For the foregoing reasons, the procedural bars imposed on Gross's arguments regarding the Trial Court's failure to rule on some of his pro se pretrial motions (claim five in part), double jeopardy (claim six), erroneous jury instructions (claims nine and ten), the Trial Court's denial of the defense's request to allow the jury to view the crime scene (claim eleven), the denial of the right to present witnesses based on the prosecution's threatening of a witness (claim fourteen), and the jail officials' destruction of legal materials (claim fifteen) are supported by the record and are adequate to foreclose review by this federal court. Because the Louisiana Supreme Court's

decisions rested on independent and adequate state rules of procedural default, this Court will not review these claims unless Gross has established one of the following exceptions.

### B.    Cause and Prejudice

A federal habeas petitioner may be excluded from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731–32); *Amos*, 61 F.3d at 338–39 (citing *Harris*, 489 U.S. at 262); *see Engle v. Isaac*, 456 U.S. 107, 128 & n.33 (1982).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that a petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, Gross has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana Supreme Court. Rather, he simply states that the claims were "best brought on post conviction."[40] The Court's review of the record does not support a finding that any factor external to the defense prevented Gross from raising the claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for

---

[40]Rec. Doc. 4, pp. 1-12, 14, 16.

his default, the Court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681–82 (5th Cir. 1977)).

Gross's defaulted arguments are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (finding habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[41]

### C.    Fundamental Miscarriage of Justice

Gross may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, Gross must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray,* 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, Petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United*

---

[41]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte. Id.*

*States*, 523 U.S. 614, 6324 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F.3d at 903.

The Court recognizes that Gross appears to raise claims of actual innocence (claims two and three) as independent substantive grounds for habeas relief.  However, the United States Supreme Court has not recognized any free-standing actual innocence claim to support habeas relief.  *McQuiggin v. Perkins*, 569 U.S. 383, 392, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) (citing *Herrera*, 506 U.S. at 404-05, 113 S.Ct. 853); *Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013); *Burton v. Stephens*, 543 F.App'x 451, 458 (5th Cir. 2013) (citing *McQuiggin*, 569 U.S. at 392, 133 S.Ct. 1924 and *Herrera*, 506 U.S. at 400, 113 S.Ct. 853); *In re Warren*, 537 F. App'x 457 (5th Cir. 2013).  The Supreme Court, however, has recognized that a credible showing of actual innocence may act as a gateway to overcome a procedurally defaulted or untimely filed federal habeas corpus claim.  *McQuiggin*, 569 U.S. at 392, 133 S.Ct. 1924.  Because there is no underlying constitutional violation in Gross's actual innocence claims (claims two and three), they are not cognizable.

Under a broad reading, Gross may intend for the Court to consider his arguments as related to the actual innocence exception to the state imposed procedural bar to review of his federal habeas claims that the Trial Court failed to rule on some of his pretrial motions, violation of double jeopardy, erroneous jury instructions, denial of request to allow the jurors to view the crime scene, prosecutorial misconduct in threatening a witness, and destruction of legal materials. Nevertheless, Gross has not met the rigorous burden of proof imposed under the actual innocence exception to excuse his procedural default of those claims.

The actual innocence standard encompasses three principles. First, a "credible [actual innocence] claim requires new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *House v. Bell*, 547 U.S. 518, 537, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). The United States Fifth Circuit Court of Appeals has held that evidence is "not 'new' [when] it was always within the reach of [petitioner's] personal knowledge or reasonable investigation." *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008). Second, the court's analysis is not limited to the new evidence presented by a petitioner in support of his actual innocence claim. *Id*. "The habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that govern at trial." *Bell*, 547 U.S. at 538, 126 S.Ct. 2064 (quoting *Schlup*, 513 U.S. at 327, 115 S.Ct. 851). In doing so, the court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup*, 513 U.S. at 331-32, 115 S.Ct. 851. Third, the "demanding" actual innocence standard "permits review only in the extraordinary case." *Bell*, 547 U.S. at 538, 126 S.Ct. 2064 (citation omitted); *see also Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) ("[O]ur precedent confirms that the mountain ... a petitioner must scale in order to prove a fundamental miscarriage claim is daunting indeed.").

In this case and under these standards, Gross has not referenced or presented any reliable new evidence of his factual innocence or any evidence that would convince a court that no juror would have found him guilty. *Accord*, *Golmon v. Director*, TDJC-CID, No. 13CV325, 2013 WL 3724838, at *1 (E.D. Tex. Jul. 15, 2013). He presents no "exculpatory scientific evidence" or "critical physical evidence." Rather, Gross essentially argues that Abreu's credibility was negated

by the "newly discovered evidence" of her testimony at the trial of co-defendant King, who was granted a new trial, which he contends is inconsistent with her statements given to law enforcement, her testimony given at a deposition, and her testimony at Gross's trial.[42]  He further argues that there is evidence that law enforcement coerced Abreu to identify him as an assailant. He points to Abreu's admission at her deposition that she told an attorney that, when she was shown the six person line up, law enforcement told her to identify Gross, although Abreu explained that she made such a statement because she was confused and wanted to be released from jail.

To the extent that Gross relies on Abreu's testimony from a deposition, that evidence is not new.  Rather, defense counsel for Gross and Gross were both present at the deposition.[43]  As for the alleged inconsistencies in Abreu's testimony King's trial, that evidence does not satisfy the exacting standard for proving actual innocence for which a petitioner must demonstrate that it is more likely than not that *no* reasonable juror would have convicted him in light of the new evidence.  *Schlup*, 513 U.S. at 327  (emphasis added).  Contrary to his argument that "[t]he only evidence regarding the conditions under which Mr. Sanchez left the apartment was Maria Abreu's testimony at trial,"[44] there was other evidence sufficient for a reasonable jury to find that that an aggravated kidnapping occurred.  Significantly, Gross stated in his recorded statement to Bradberry and Renaudin, which was played for the jury, that upon Sanchez's return to the

---

[42]Rec. Doc. 4-2, pp. 15-29.  On September 13, 2013, the state district court denied King's motion for judgment of acquittal but granted his motion for new trial finding that there were no witnesses to the murder and that Abreu was the only witness to the events that occurred in the apartment and that there were many inconsistencies in her testimony.  *Id.*, at p. 18.  While the Louisiana Fifth Circuit reversed, the Louisiana Supreme Court reinstated the district court ruling.  *State v. King*, 232 So.3d 1207 (La. 2017).  The record does not reflect whether a new trial has occurred.

[43]St. Rec. Vol. 6 of 20, State's Response to Willie Gross's Application for Post-Conviction Relief, Ex. 13 (Deposition Transcript of Eugenia Abreu dated March 27, 2008), 8/24/15.

[44]Rec. Doc. 4-2, p. 17.

apartment, he, King and the other assailant forced Sanchez into the Expedition at gunpoint.[45]  Gross

specifically explained, "They, they still armed.  They, they have him in the uh, they was putting

him in the truck" and "he was actually getting in the truck, it was, you know, one was behind him,

you know, with a gun, and told him to get in.  He did.  He got in the truck."[46]  During that statement,

Gross initially admitted that he was in the backseat with Sanchez but then claimed that he followed

them in his truck.[47]  Abreu's testimony was consistent with Gross's statements to law enforcement

that Gross, King and another assailant were armed when they went to Sanchez's apartment to rob

him and that they forced their way into the apartment and restrained Abreu while they searched

for drugs.  There was further evidence that Sanchez had purchased chicken from Popeye's Chicken

shortly before the incident and that the chicken and a soda were found strewn across the floor of

the apartment.[48]  This evidence was consistent with Abreu's testimony that, upon Sanchez's return,

she heard a crash and seconds later saw his vehicle leave with four people in it.[49]  Sanchez's body

was discovered later than evening and his vehicle was later found burned.[50]

 Gross's attack on the credibility of Abreu along with his argument of innocence were

presented to the jury and the state courts and resolved against him.  For these reasons, he has failed

to overcome the procedural bar to his claims, and his fifth (in part), sixth, ninth, tenth, eleventh,

fourteenth and fifteen claims must be dismissed with prejudice as procedurally barred.

---

[45]State Rec. Vol. 6 of 20, State's Response to Willie Gross's Application for Post-Conviction Relief, Exh. 2 (Jefferson Parish Sheriff's Office Transcribed Audio Tape Statement Form taken 12/6/07), p. 6, 7/24/15.

[46]*Id.*

[47]*Id*.

[48]St. Rec. Vol. 11 of 20, Trial Transcript, p. 13, 19, 11/15/11; Trial Transcript, p. 10, 11/16/11; St. Rec. Vol. 12 of 20,Trial Transcript (con't), pp. 11/16/11.

[49]St. Rec. Vol. 12 of 20, Trial Transcript (con't), pp. 88-90, 11/16/11.

[50]St. Rec. Vol. 11 of 20, Trial Transcript, pp. 11-13, 29-31, 37-41, 11/15/11.

**V.**    **Standards for a Merits Review**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not

'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* " '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.' " *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641

(quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.    Sufficiency of the Evidence (Claim No. 1)

Gross contends that the evidence was insufficient to convict him of second degree murder.[51]  Gross asserts that there was no evidence linking to Sanchez's murder and that Abreu's testimony was not credible.  Gross alleges that he went to Sanchez's home to conduct a drug deal and that, when he left, Sanchez was alive.  The State argues that the evidence that was presented at trial was sufficient to establish each element of the crime charged and denial of relief by the state courts' was proper under federal law.

Gross's counsel raised the sufficiency of the evidence on direct appeal to the Louisiana Fifth Circuit.  Relying on the standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) and related state law, the Court resolved that the evidence was sufficient to convict Gross under the felony murder theory of second degree murder.  The Louisiana Fifth Circuit found that Abreu's testimony regarding the incident, Gross's testimony that his statement to police was fabricated, and his testimony that they went to Sanchez's apartment to conduct a drug deal and that he was alive when Gross left, went to credibility which was exclusively a jury decision and that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to establish that the defendant was guilty of the

---

[51]As was the case on his direct appeal to the Louisiana Fifth Circuit, Gross does not appear to contest the sufficiency of the evidence to sustain his armed robbery conviction.  He only addresses his second degree murder conviction argues that "no rational trier of fact could have found that the state bore its burden of proving the element of felony murder or intent beyond a reasonable doubt."  Rec. Doc. 4-2, pp. 10-11.

second degree murder.[52]  This was the last reasoned opinion on the issue because the Louisiana Supreme Court denied relief without stated reasons.  *See Ylst*, 501 U.S. at 802.

Claims of insufficient evidence present a mixed question of law and fact.  *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of Supreme Court law.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011).  Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."  La. Rev. Stat. § 15:438.  However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review.  *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

To the extent Gross relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence

---

[52]*Gross*, 110 So.3d at 1179-81; St. Rec. Vol. 3 of 20, 5th Cir. Opinion, 12-KA-73 C/W 12-KH-826, pp. 8-13, 2/21/13.

test . . .. Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So. 2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So. 2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So. 2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (per curiam) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"

*Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Gross was charged with and convicted of second degree murder. Second degree murder is defined in relevant part by Louisiana law as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm; or (2) when the offender is engaged in the perpetration or attempted perpetration of ... aggravated kidnapping, second degree kidnapping … armed robbery, first degree robbery, second degree robbery, simple robbery ... even though he has no intent to kill or to inflict great bodily harm." La. Rev. Stat. § 14:30.1(A)(1).

In this case, although the jury was charged with both theories, the State indicted Gross under the second theory. The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Ann. § 14:10(1). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554 So. 2d 1317, 1321 (La. App. 1st Cir. 1989); *State v. Tate*, 851 So. 2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So. 2d 714, 717 (La.1987)). Specific intent to kill can be implied by the intentional use of a deadly weapon, such as a knife or a gun. *State v. Collins*, 43 So. 3d 244, 251 (La. App. 1st Cir. 2010) (citing *State v. Brunet*, 674 So.2d 344, 349 (1996)).

The State sought to prove that Sanchez's death occurred during the commission of at least one of the enumerated felonies, specifically second degree kidnapping. Under Louisiana law in relevant part, second degree kidnapping is the forcible seizing and carrying of any person from one place to another when the perpetrator offender is armed with a dangerous weapon. La. Rev. Stat. §

14:44.1(A)(5). The Louisiana Supreme Court has held that the term "from one place to another" "requires evidence that the offender relocated the victim from one physical setting or environment to another." *State v. Davillier*, 752 So.2d 149, 150 (La. 1999). Second degree kidnapping is a general intent crime. *State v. Jackson*, 132 So.3d 516, 530 (La. App. 2d Cir. 2014).

General criminal intent exists under Louisiana law "when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. Rev. Stat. § 14:10(2). General intent may be inferred from the circumstance of the transaction and proved by direct or circumstantial evidence. *State v. Brokenberry*, 942 So. 2d 1209, 1213 (La. App. 2d Cir. 2006); *State v. Culp*, 17 So. 3d 429, 435 (La. App. 2d Cir. 2009). Determination of whether the requisite intent is present in a criminal case is for the trier of fact. *State v. Brown*, 92 So. 3d 579, 585 (La. App. 2d Cir. 2012) (citing *State v. Huizar*, 414 So. 2d 741 (La. 1982)).

Louisiana law defines "principals" as "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime[.]" La. Rev. Stat. § 14:24. Under the law of principals, all persons involved in the commission of a crime are equally culpable, and it is of no consequence whether Gross was present when Sanchez was killed or which of the perpetrators fired the actual shot that killed the victim. *See, e.g.*, *State v. Massey*, 91 So.3d 453, 463-64 (La. App. 5th Cir. 2012); *State v. Page*, 28 So.3d 442, 449-50 (La. App. 5th Cir. 2009).

In resolving the issue of sufficiency of the evidence, the state appellate court focused on the felony-murder prong of the second degree murder definition. The jury heard testimony from Abreu

that Gross, King and a third assailant, armed with guns, forced their way into Sanchez's apartment.[53]

Abreu was restrained while the assailants searched the apartment, ultimately taking money, jewelry,

cellphones and a gun.[54] Abreu heard Sanchez return and heard something fall to the floor.[55] Within

seconds, she saw the perpetrators leave in Sanchez's Expedition with Sanchez in the backseat between

two of the men.[56] Gross admitted in his statement to police that they were armed and forced Sanchez

into the Expedition and eventually drove toward New Orleans East.[57] Sanchez was found dead of a

gunshot wound on the side of the interstate in New Orleans East later that evening.[58] According to

Gross's statement, King told him that they had "handled that," which Gross interpreted to mean that

that they had killed him.[59] Gross explained in his recorded statement that:

> Well Javier knew him, you know, he didn't knew me. So, you know, and with this guy and this girl's background and things, you know, we already had done, you know, discussed that, you know, one point of the time, you know, I'm like, you know, they don't know me, you know, they know you, you know them, you know, so I know if he was faced with that situation he gonna get rid of him for fear that Javier was gone so being killed or whatever. That's the only way, you know, Javier was going so being killed or whatever. That's the only way, you know, you know, the only way out so it was like, you know, you can't not do anything, so I feel like, you know, that's what he did, you know, took him out.[60]

---

[53] State Rec. Vol. 12 of 20, Trial Transcript (con't), pp. 77-78, 95, 11/16/11.

[54] *Id.*, at pp. 81-85, 87-88.

[55] *Id.*, at pp. 86-87, 106, 132.

[56] *Id.*, at pp. 88-90, 104, 133.

[57] State Rec. Vol. 6 of 20, State's Response to Willie Gross's Application for Post-Conviction Relief, Exh. 2 (Jefferson Parish Sheriff's Office Transcribed Audio Tape Statement Form taken 12/6/07), p. 6, 7/24/15; State Rec. Vol. 12 of 20, Trial Transcript (con't), p. 173, 11/16/11.

[58] State Rec. Vol. 11 of 20, Trial Transcript, State Rec. Vol. 12 of 20, Trial Transcript (con't), pp. 151-152, 11/16/11.

[59] State Rec. Vol. 6 of 20, State's Response to Willie Gross's Application for Post-Conviction Relief, Exh. 2 (Jefferson Parish Sheriff's Office Transcribed Audio Tape Statement Form taken 12/6/07), p. 7, 7/24/15.

[60] *Id.*, at p. 8.

While Gross argues that the testimony of Abreu was not credible and that his statement to police was fabricated, the jury obviously found Abreu's testimony and statements to be credible and rejected Gross's testimony. *Jackson* limits this Court's review to the evidence before the trier of fact and does not allow the Court to reassess the weight and credibility of the evidence. *See Jackson*, 443 U.S. at 319 (finding that such matters are left to the factfinder). Specifically, the determination of the credibility of a witness is within the province of the jury and is not to be disturbed on habeas review. *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); *Holderfield*, 903 F. Supp. at 1018 (citing *United States v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)) (The habeas court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact.). The jury's resolve was reasonable and supported by the evidence and testimony.

A rational trier of fact, after viewing this evidence in the light most favorable to the prosecution, could easily find beyond a reasonable doubt that Gross, King and another kidnapped Sanchez at gunpoint and took him to New Orleans East where one of the three men shot and killed him.

The state courts' rejection of Gross's insufficient evidence claim does not present an unreasonable application of Supreme Court precedent to the facts of this case. Gross is not entitled to relief on this claim.

## VII.   Denial of Right to Present a Defense (Claim No. 4)

Gross next claims that the Trial Court denied him his right to present a defense when it prohibited defense counsel from questioning a detective regarding a bloody fingerprint that was found on the passenger side of Izaguirre's vehicle and by excluding evidence of the police investigation into Izaguirre regarding Sanchez's murder.

Gross raised the issue on direct appeal.  The Louisiana Fifth Circuit, relying on state law, found that the Trial Court's evidentiary rulings were not an abuse of discretion.[61]  The Court found that the evidence regarding the bloody fingerprint was inadmissible hearsay and did not warrant the use of the "fairness exception."[62]  It further found that the rulings did not interfere with Gross's constitutional right to present a defense as it was apparent from the record that the theory of defense was that Izaguirre may have been responsible for Sanchez's murder and that Gross had extensively cross-examined Detective Renaudin about the possibility that Izaguirre was involved in the murder.[63]  This was the last reasoned opinion as the Louisiana Supreme Court denied relief without stated reasons.  *See Ylst*, 501 U.S. at 802.

A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); *accord Molo v. Johnson*, 207 F.3d 773, 776 n. 9 (5th Cir. 2000); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle*, 502 at 67–68; *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).  Federal habeas review is limited to errors of constitutional dimension and federal courts do not sit to review the mere admissibility of evidence under state law. *Estelle*, 502 U.S. at 67-68; *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Castillo v.*

---

[61]*Gross*, 110 So. 3d at 118-2-84;St. Rec. Vol. 3 of 20, 5th Cir Opinion, 12-KA-73 C/W 12-KH-826, pp. 13-15, 2/21/13.

[62]*Id.*, at 1183-84; St. Rec. Vol. 3 of 20, 5th Cir Opinion, 12-KA-73 C/W 12-KH-826, pp. 15-16, 2/21/13.

[63]*Id.*; St. Rec. Vol. 3 of 20, 5th Cir Opinion, 12-KA-73 C/W 12-KH-826, p. 16, 2/21/13.

*Johnson*, 114 F.3d 218, 222 (5th Cir. 1998). Thus, to the extent that Gross argues that the evidence of the bloody fingerprint and the investigation of Izaguirre was excluded from his trial in violation of Louisiana evidence rules or by other error in the Trial Court's rationale and reasoning, those claims are not cognizable on federal habeas review. *See Swarthout, 562 U.S.* at 219.

The states are free to implement procedures regarding the admission and/or exclusion of evidence, provided those procedures do not infringe on a constitutional guarantee. *Burgett v. Texas*, 389 U.S. 109, 113–14 (1967); *Williams v. Price*, 343 F.3d 223, 230 n. 3 (3rd Cir. 2003); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993); *Nees v. Culbertson*, 406 F.2d 621, 625 (5th Cir. 1969); *Tillman v. Thaler*, No. A–09–CA582–SS, 2010 WL 2731762, at *13 (W.D. Tex. July 9, 2010). Gross's claims that the Trial Court erred in limiting his use of the investigation into Izaguirre and the bloody fingerprint found on his car may support federal habeas corpus relief only if the state court evidentiary rulings violate due process in such a way as to render Gross's criminal proceedings fundamentally unfair. *Lisenba v. California*, 314 U.S. 219, 236–37 (1941); *Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011); *see Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as "to render the trial fundamentally unfair or violate an explicit constitutional right"). Federal habeas corpus relief may be granted on erroneous state evidentiary rulings only if the evidence at issue is "a crucial, critical, or highly significant factor in the context of the entire trial." *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987) (citations omitted); *accord Gonzales*, 643 F.3d at 430; *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

The question of whether evidence is constitutionally admitted or excluded is a mixed question of law and fact. *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir.), *cert. denied*, 522 U.S. 880 (1997); *Tyson v. Trigg*, 883 F.Supp. 1213, 1218 (S.D. Ind. 1994) *aff'd*, 50 F.3d 436 (7th

Cir. 1995), *cert. denied*, 516 U.S. 1041 (1996).  Under the applicable standard of review, this court therefore must determine whether the state courts' decisions are contrary to or involve an unreasonable application of Supreme Court precedent.

A defendant has a constitutional right to present a complete defense.  *Taylor v. Illinois*, 484 U.S. 400, 408 (1988).   While the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, this right is not absolute.  *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).  Broad latitude is granted to states to establish rules excluding evidence from criminal trials.  *Id*. at 324; *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013).  The Supreme Court has "[o]nly rarely [. . .] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."  *Nevada v. Jackson*, 133 S. Ct. at 1992 (citations omitted).  The Court has instead recognized that the Due Process Clause does not guarantee the right to introduce all evidence the defendant deems relevant, because the right to present even relevant evidence is not "absolute."  *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  The right to present a complete defense is not "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Taylor*, 484 U.S. at 410.

"[T]he Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' "  *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987) (emphasis original) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)); *see also Rizzo v. Smith*, 528 F.3d 501, 506 (7th Cir. 2008).  "For the exclusion of evidence to violate this right by denying the accused a fundamentally fair trial, the evidence must be 'material,' in the constitutional sense that it 'creates

a reasonable doubt that did not otherwise exist . . . ." *Jimenez v. Walker*, 458 F.3d 130, 146 (2nd Cir. 2006), *cert. denied*, 549 U.S. 1133 (2007) (quoting *United States v. Agurs*, 427 U.S. 97, 112-13 (1976)).  " 'If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.'  But "if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.' " *Id*. at 146-47 (quoting *Agurs*, 427 U.S. at 112-13).  "As with many rights, the right to present a defense is not unlimited." *Jimenez*, 458 F.3d at 147. "[W]e have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).  "The Constitution leaves to the judges who make decisions 'wide latitude' to exclude evidence that is . . . 'only marginally relevant' . . . . *Id*. at 690 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

In this case, Detective Renaudin testified that Sanchez was a person of interest in an ongoing DEA investigation, the Harvard Street residence was searched by DEA pursuant to a warrant, and that Izaguirre and John Lusena, who were associates and co-workers of Sanchez, were detained.[64]  Renaudin interviewed Izaguirre and Lusena and found them to be cooperative.[65] Renaudin verified their alibis.[66]  Renaudin testified that he never considered Izaguirre or Lusena to be suspects in Sanchez's murder because they did not fit Abreu's descriptions of the assailants,

---

[64]State Rec. Vol. 12 of 20, Trial Transcript (con't), pp. 158, 201-203, 2011, 11/16/15.

[65]*Id*., at pp. 158, 208.

[66]*Id*., at pp. 158, 209.

their fingerprints were not found at Sanchez's residence, they did not have any violent criminal history, and they were not implicated by the statements of King or Gross.[67]  While the Trial Court sustained the State's objections to some of defense counsel's questions regarding the search of the Harvard Street residence including the discovery of a bloody fingerprint on the passenger door of Izaguirre's vehicle[68], Renaudin explained that he was not present when the search warrant was executed and that the information in his report pertaining to the search was from the investigation by the DEA and Louisiana State Police.[69]

Gross has failed to show that his trial was rendered fundamentally unfair by virtue of the Trial Court's exclusion of evidence regarding the bloody fingerprint and the information in Renaudin's report regarding the investigation of Izaguirre.  It is clear from the record that Gross was fully able to present the defense he sought to assert concerning his presence in Sanchez's home to conduct a drug deal rather than a robbery and that he had nothing to do with Sanchez's kidnapping and murder.  It was evident that his defense was, that when he left Sanchez's residence, Sanchez was alive and was having an argument with Izaguirre.  The jury rejected that defense, as it was entitled to do given the other evidence of Gross's guilt.

The state courts' rejection of Gross's claim was not contrary to and does not involve an unreasonable application of clearly established Supreme Court law.  Gross is not entitled to relief as to this claim.

## VIII.  <u>Admission of Involuntary Statement (Claim No. 5)</u>

---

[67]*Id.*, at pp. 200-201, 209-213.

[68]State Rec. Vol. 12 of 20, Trial Transcript, pp. 16-20, 11/17/15.

[69]State Rec. Vol. 12 of 20, Trial Transcript (con't), p. 203, 2011, 11/16/15; State Rec. Vol. 12 of 20, Trial Transcript, pp. 19-20, 11/17/15.

Gross next claims that the Trial Court erred in denying his motion to suppress his statement to police. Gross claims his statement was not freely and voluntarily made but rather was the result of physical and psychological abuse by the police. He further claims that he invoked his right to counsel when he was taken into custody in Texas and advised the detectives of his attorney's name at that time. He also claims that the Trial Court erred in failing to reopen the suppression hearing.

In 2008, prior to the return of the superseding indictment charging Gross and King with second degree murder and aggravated robbery, the defense filed motions to suppress the statements Gross and King made to law enforcement.[70] The state district court held an evidentiary hearing on September 29, 2008, after which it denied the motions.[71] Those rulings were confirmed in a hearing on August 30, 2010.[72]

After Gross was indicted on the charges in this case in 2011, his counsel filed omnibus motions, including a motion to suppress the statements.[73] Defense counsel also filed a motion to adopt co-defendant King's motions.[74] Gross filed pro se motions to suppress his statements.[75] The record does not indicate a ruling on those motions. However, during King's trial, King's counsel successfully moved to reopen the suppression hearing based on evidence in a New Orleans Police Department report that Williams continued to question King after he had refused to waive his

---

[70]Those motions were filed in the original case 08-0002 and are not a part of the record.

[71]St. Rec. Vol. 14 of 20, Hearing Transcript, 9/29/08.

[72]St. Rec. Vol. 14 of 20, Hearing Transcript, p. 6, 8/30/10.

[73]St. Rec. Vol. 1 of 20, Omnibus Motions and Order for Pretrial-Motions, 2/15/11.

[74]St. Rec. Vol. 1 of 20, Motion to Adopt Co-Defendant's Motions, Subpoenae, Subpoena Duces Tecum, 3/2/11.

[75]St. Rec. Vol. 1 of 20, Motion to Suppress the Confession, 3/14/11; Defendant's Motion to Compel Suppress Statement Hearing, 8/117/11 (dated 8/14/11)

rights and the state district court granted King's motion to suppress his statement made to Williams.[76]

Gross raised the issue regarding the denial of his motion to suppress and the failure to reopen the suppression hearing on direct appeal. In the last reasoned opinion, the Louisiana Fifth Circuit, after reviewing the evidence from the suppression hearing and trial, found that the State had met its burden of proving the admissibility of the statement.[77] The Court explained that Gross was properly advised of his constitutional rights and knowingly and voluntarily waived those rights prior to giving his statement. The Court found that all of the officers involved in taking Gross's statement testified at the suppression hearing, the trial or both and that another suppression hearing was unnecessary.[78]

The admissibility of a confession is a mixed question of law and fact. *Miller v. Fenton*, 474 U.S. 104, 112 (1985); *ShisInday v. Quarterman*, 511 F.3d 514, 522 (5th Cir. 2007) (citing *Miller*, 474 U.S. at 112). A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998). In doing so, a federal habeas court must afford a presumption of correctness to state courts' findings of fact, if they are fairly supported by the record. *Miller*, 474 U.S. at 117. Similarly, the habeas corpus statute obliges

---

[76]Rec. Doc. 4-8, Exh. 6 (Transcript, 3/3/11).

[77]*Gross*, 110 So. 3d at 1184-87; State Rec. Vol. 3 of 20, 5th Cir, Opinion, 12-KA-73 C/W 12-KH-826, pp. 16-22, 2/21/13.

[78]*Id.* at 1187; State Rec. Vol. 3 of 20, 5th Cir, Opinion, 12-KA-73 C/W 12-KH-826, p. 22, 2/21/13.

federal judges to respect credibility determinations made by the state court trier of fact.  *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993) (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)).

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), a statement made by a person in custody is inadmissible unless that person was informed that he has the right to have an attorney present during questioning, that he has the right to remain silent, and that anything that he says may be used against him.  *Id.*, 384 U.S. at 444-45.  These rights may be waived so long as the waiver is knowing and voluntary.  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  Two inquiries determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination.  *Moran*, 475 U.S. at 421; *Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir. 2002).  First, waiver of the right must be voluntary and not the product of intimidation, coercion or deception.  *Moran*, 475 U.S. at 421.  Second, the waiver or relinquishment must be made with full awareness of the nature of the right being waived.  *Id*.  The Supreme Court does not require that any precise language be continued in the written waiver forms used by police officials, as long as the warnings "were sufficiently comprehensive and comprehensible when given a commonsense reading."  *Florida v. Powell*, 559 U.S. 50, 63 (2010).  The court must consider the "totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973).

A finding of coercive police conduct is a necessary prerequisite to a conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession.  *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997) (citing *Colorado v. Connelly*, 479 U.S. 157, 163-67, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)).  Determining whether officers engaged in coercive tactics to elicit a confession is a question of fact, and the state court's

factual findings are entitled to deference when supported by the record. *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993); *Self v. Collins*, 973 F.2d 1198, 1204 (5th Cir. 1992); *see also*, *Miller*, 474 U.S. at 112, 106 S.Ct. 445 (noting that subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness). Thus, federal judges are to respect credibility determinations made by the state court trier of fact. *Pemberton*, 991 F.2d at 1225 (citing *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982)). However, if the underlying facts as determined by the state court indicate the presence of some coercive tactic, the impact that factor had on the voluntariness of the confession is a matter for independent federal determination and is ultimately a legal determination. *Miller*, 474 U.S. at 117, 106 S.Ct. 445; *ShisInday*, 511 F.3d at 522.

In Gross's case, in accordance with *Jackson v. Denno*, 378 U.S. 368 (1964), the Trial Court conducted a full evidentiary hearing on the motion to suppress filed by counsel and the admissibility of the inculpatory statements. The Trial Court received testimony from the investigating officers, including the interviewers Bradberry and Williams, and other evidence, including the waiver of rights form signed by Gross, the transcript of his statement, and Abreu's deposition.[79] The Trial Court found no basis to suppress the statement and denied the motion. On direct appeal, the Louisiana Fifth Circuit entered its own findings on the issue.

In reviewing the claims, the Louisiana Fifth Circuit determined that both the hearing and trial records proved beyond a reasonable doubt that Gross was advised of his *Miranda* warnings prior to making his statements. The record established that he waived his rights and that his

---

[79] St. Rec. Vol. 14 of 20, Hearing Transcript, 8/30/10.

statements were freely and voluntarily given, and that he was not under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.

On federal habeas review, this Court must presume correct the factual determinations made by the state courts, including that Gross was read his *Miranda* rights, he indicated that he understood his rights, and that he voluntarily waived those rights and that the circumstances of his interviews did not amount to duress.  *See Pemberton*, 991 F.2d at 1225.

The record before this Court supports the state courts' findings.  Sergeant Bradberry testified at the suppression hearing that he read Gross his *Miranda* rights before transporting him from Texas to Louisiana, that Gross said he understood them, and that Gross asked questions about the evidence and intermittently made statements during the drive.[80]  According to Bradberry, Gross slept on and off during the drive, was offered food and was allowed to use the bathroom.[81]  Bradberry explained that when they arrived in Jefferson Parish, he reviewed a written waiver of rights form with Gross, which Gross executed, and after which he made a recorded statement.[82]  Bradberry testified that at no time did Gross ever request to speak to an attorney and that no force, coercion, intimidation or promises were made at any time to induce him into making a statement.[83]  On rebuttal at trial, Bradberry similarly testified that Gross was advised of his rights and made statements during the trip back to Louisiana.[84]  He testified that Gross napped, was offered food,

---

[80]State Rec. Vol. 14 of 20, Suppression Hearing Transcript, pp. 26-27, 30-35, 37, 8/30/10.

[81]*Id.*, at p. 32.

[82]*Id.*, at pp. 27-28, 35-37, 46.

[83]*Id.*, at pp. 27-29, 37.

[84]St. Rec. Vol. 13 of 20, Trial Transcript (con't), pp. 183-84, 11/17/11.

and used the restroom during the trip.[85]  Bradberry denied that anyone ever struck Gross or called him any derogatory names.[86]

Detective Williams testified at the suppression hearing that she had seen Gross's executed waiver form before he gave her a statement.[87]  Williams testified that Gross never requested to speak to an attorney and no force, coercion, or intimidation was used nor promises made to get him to make a statement.[88]  At trial, Williams testified that she initially met with Gross at 1:56 a.m. on December 6, 2007, at which time he did not make a statement.[89]  Around 8:00 a.m., Williams was notified by the Jefferson Parish Detective Bureau that Gross wished to make a statement.[90]  Williams returned and Gross gave a statement.[91]

Detective Renaudin, who was with Bradberry when they drove Gross back to Louisiana, testified at trial that he advised Gross of his rights when they were in the vehicle and that Gross said he understood them.[92]  Renaudin read to Gross excerpts of the police report, including King's statement, but Gross denied any involvement in the incident.[93]  Gross slept during the trip and was

---

[85]*Id.*

[86]*Id.*, at pp. 181-82.

[87]St. Rec. Vol. 14 of 20, Hearing Transcript, pp. 50-54, 60, 8/30/10.

[88]*Id.*, at pp. 51, 57-58, 63, 70.

[89]St. Rec. Vol. 12 of 20, Trial Transcript, p. 67, 11/17/11.

[90]*Id.*, at pp. 67-68.

[91]*Id.*, at 67-68, 75-77.

[92]St. Rec. Vol. 12 of 20, Trial Transcript (con't), 11/16/11.

[93]*Id.*, at pp. 167-68, 190-91.

offered the opportunity to eat and use the restroom.[94]  Gross was also allowed to sleep at the Investigation Bureau prior to being interviewed.[95]  Thereafter, Gross was again advised of his rights and executed a waiver of rights form and gave a recorded statement.[96]  Renaudin denied threatening, slapping or beating Gross and testified that Gross's statement was made voluntarily.[97]  According to Renaudin, Gross never asked to speak with counsel.[98]

To overcome the presumption of correctness as to these findings, Gross must rebut these factual findings by clear and convincing evidence, which he has not done.  In his federal habeas petition, Gross merely repeats his allegations that he requested an attorney and of physical and psychological abuse already addressed by the state courts.  These allegations, however, are unsupported by any evidence adduced at the motion hearing.  While Gross testified at trial that he was physically and psychologically abused, the state courts found his testimony not to be credible.  As previously explained, the court must respect credibility determinations made by the state court trier of fact.  *Pemberton*, 991 F.2d at 1225 (citing *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982)).

The state courts' factual determinations regarding voluntariness are adequately supported by the credible testimony in the record.  Therefore, this Court on habeas corpus review must accept

---

[94]*Id.*, at 167, 193.

[95]*Id.*, at 193.

[96]*Id.*, at pp. 168-71.

[97]*Id.*, at p. 171.

[98]*Id.*, pp. at 190-91.

as conclusive the state courts' factual determination that the challenged statements were voluntary and were not a product of physical or psychological abuse.

Accordingly, the state courts' denial of relief on this issue is not contrary to, or an unreasonable application of, Supreme Court precedent. Gross is not entitled to relief on this issue.

## IX.    <u>Exculpatory Evidence (Claim No. 7)</u>

Gross next claims that the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny by failing "to disclose the criminal conviction of their key witness."[99]  He alleges that the State withheld evidence that Abreu had a federal conviction for possession of stolen mail.

Gross raised this issue in his application for post-conviction relief.  The Trial Court found no merit to the claim as the evidence was made available to the defense prior to trial.[100]  The Louisiana Fifth Circuit agreed with the determination of the Trial Court that there was no *Brady* violation because the State did not suppress the evidence.[101]  In the last reasoned opinion, the Louisiana Supreme Court found that Gross failed to meet his post-conviction burden of proof.[102]

" 'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.' " *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471 at *6 (5th Cir. Apr. 16, 2002) (quoting *United States*

---

[99]Rec. Doc. 4-2, p. 71.

[100]St. Rec. Vol. 7 of 20, Trial Court Order, p. 2, 2/17/16.

[101]St. Rec. Vol. 7 of 20, 5th Cir. Opinion, 16-KH-159, p. 3, 5/5/16.

[102]*State ex rel. Gross*, 227 So.3d at 282; St. Rec. Vol. 19 of 20, La. S. Ct. Order, 16-KH-1088, 9/29/17.

*v. Scheffer*, 523 U.S. 303, 329 n. 16 (1998)).  These violations will only occur when the defendant is denied the opportunity to cross-examine a witness, prevented from putting a witness on the stand, or prevented from introducing material evidence.  *Id*.

The prosecution's production of impeachment evidence is addressed by the rules announced in *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Supreme Court required that state prosecutors produce exculpatory and impeachment evidence.  *Brady*, 373 U.S. at 87.  The *Brady* disclosure requirement applies only to evidence that is exculpatory and material to guilt or that is favorable impeachment evidence.  *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Brady*, 373 U.S. at 87.  Claims pursuant to *Brady* involve " 'the discovery of evidence after trial of information which had been known to the prosecution but unknown to the defense.' "  *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).  Thus, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim."  *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980); *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (holding that *Brady* does not require prosecutors to furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence); *Rector v. Johnson*, 120 F.3d 551, 558–59 (5th Cir. 1997) (holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence).  *Brady* also does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case.  *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted); *Bigby v. Cockrell*, 340 F.3d 259, 279 (5th Cir. 2003).

The Supreme Court made clear that "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Kyles*, 514 U.S. at 436–37. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109–10.

Three factors must be considered to evaluate an alleged *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been <u>suppressed by the State</u>, either willfully or inadvertently; and (3) prejudice must have ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler*, 527 U.S. at 281–82). Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (citing *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

In *Kyles*, the Supreme Court extended the *Brady* ideal and held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, *see Brady*, 373 U.S., at 87, 83 S.Ct., at 1196–1197) the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." *Kyles*, 514 U.S. at 438.

A claim under *Brady* is a mixed question of law and fact. *Higgins v. Cain*, 434 F. App'x 405, 406 (5th Cir. 2011) (citing *Banks v. Thaler*, 583 F.3d 295, 309 (5th Cir. 2009)). Under the

applicable standard of review, this Court therefore must determine if the state court's decision to denying relief was contrary to or involved an unreasonable application of Supreme Court precedent.

Gross asserts that the evidence of Abreu's criminal history would have served as impeachment evidence to place her credibility at issue before the jury, and because she was the State's sole witness present at the apartment during the incident, it was likely that the result of the trial would have been different.  Under the *Brady* disclosure rules, the United States Supreme Court has held that "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. United States*, 405 U.S. 150, 153–54 (1972) (internal quotations and citation omitted).

There is nothing in the record to establish that the State concealed evidence of Abreu's criminal history from the defense.  The record reflects that an application for certification of materiality of out-of-state witness was filed with the Trial Court on September 2, 2011, two months prior to Gross's trial.[103]  The application indicated that Abreu was on federal probation and the name of her probation officer.[104]  Gross admitted that he located the application in the state court record.[105]

As the information that Abreu was on federal probation was in the record of the state trial court, the prosecution was under no obligation under *Brady* to assist Gross further.  *See Marrero*, 904 F.2d at 261; *Bigby*, 340 F.3d at 279.

---

[103]St. Rec. Vol. 10 of 20, Ex Part Application for Certification of Materiality of Out-of-State Witness, 9/2/11.

[104]*Id.*, at p. 5.

[105]Rec. Doc.4-2, p. 71.

The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court precedent.  Gross is not entitled to relief on this issue.

## X.     Perjured Testimony/False Evidence (Claim No. 8)

Gross next claims that the State knowingly presented false evidence relative to whether Gross could be tied to a residence located in the 4700 block of Francis Drive which was one block from where Sanchez's burned vehicle was found.  Gross contends that the prosecution knowingly presented the perjured testimony of Detective Rivere that Gross lived at the residence as well as a map of locations of recovered evidence near the residence.

Gross raised this claim in his application for post-conviction relief.  The Trial Court found that there was no merit to the claim as Gross supplied the information regarding his ties to the Francis Drive address and admitted at trial that he had supplied the information.[106]  The Louisiana Fifth Circuit agreed with that determination.[107]  The Louisiana Supreme Court found that Gross failed to meet his post-conviction burden.[108]

A state denies a defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  *Giglio v. United States*, 405 U.S. 150, 766, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).  In order to obtain relief, the defendant must show that: (1) the testimony was <u>actually false</u>, (2) the <u>State knew</u> the testimony

---

[106]St. Rec. Vol. 7 of 20, Trial Court Order, p. 2, 2/17/16.

[107]St. Rec. Vol. 7 of 20, 5th Cir. Opinion, 16-KH-159, pp. 4-5, 5/5/15.

[108]*State ex rel. Gross*, 227 So.3d at 282; St. Rec. Vol. 19 of 20, La. S. Ct. Order, 16-KH-1088, 9/29/17.

was false, and (3) the testimony was <u>material</u>. *Duncan v. Cockrell*, 70 F. App'x 741, 744-45 (5th Cir. July 3, 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993). False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict. *Duncan*, 70 F. App'x at 744 (citing *Nobles*, 127 F.3d at 415).

Here, it is clear that Gross has not met his burden of proving that the testimony was actually false and that the prosecution knew it to be false and allowed it to go uncorrected. Detective Rivere testified that Sanchez's burned vehicle was located in close proximity to an address on Francis Drive which was believed to be a former or current address of Gross or that of one of his relatives.[109] Rivere generated a map showing the location where the vehicle was recovered and the residence on Francis Drive.[110] On cross-examination, Rivere testified that he believed that the Francis Drive address was listed on Gross's arrest record as a previous address.[111] Rivere also testified that Detective Williams told him that the residence was the home of Gross or his mother.[112] Rivere admitted that he did not personally determine whether Gross ever lived at the address and that he was not in possession of any physical evidence, including the arrest record, demonstrating that Gross had ties to the residence.[113]

Detective Williams testified that Gross made a statement that King and Ben came to Gross's residence on Francis Drive and told him that they had taken care of Sanchez.[114] Williams's

---

[109]St. Rec. Vol. 11 of 20, Trial Transcript, pp. 48-55, 11/15/11.

[110]*Id.*, at p. 49.

[111]*Id.*, at p. 51.

[112]*Id.*, at pp. 54, 56-57.

[113]*Id.*, atpp.51, 53, 56.

[114]St. Rec. Vol. 12 of 20, Trial Transcript, pp. 76-77, 11/17/11.

police report also indicates that Gross told her that King and the third perpetrator met Gross at his residence on Francis Drive and then drove to Sanchez's residence.[115]

According to the transcript of Gross's statement taken by Bradberry and Renaudin, King and his cousin met Gross at Gross's relative's house on Francis Drive.[116] After the robbery, Gross returned to his relative's house on Francis Drive and, later, King and his cousin returned to tell him that they had gotten rid of Sanchez.[117] A record from the Orleans Parish Assessor's Office indicates that the residence located at 4791 Francis Drive is owned by Homer and Bessie Gross.[118] Significantly, Gross admitted at trial that he gave the police the information regarding Francis Drive.[119]

Gross's argument is based on his mere conclusion that Rivere's testimony was false because it was not corroborated by physical evidence and his arrest record includes a Baton Rogue address. He further contends that his statements to law enforcement were fabricated and that he truthfully testified at trial that he had no connection to the Francis Drive residence. However, perjury is the offering of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). The fact that Rivere's testimony was inconsistent

---

[115]Rec. Doc. 4-8, Exh. 8, p. 2.

[116] State Rec. Vol. 6 of 20, State's Response to Willie Gross's Application for Post-Conviction Relief, Exh. 2 (Jefferson Parish Sheriff's Office Transcribed Audio Tape Statement Form taken 12/6/07), p. 2, 7/24/15.

[117]*Id.*, at p. 7.

[118]St. Rec. Vol. 6 of 20, State's Response to Willie Gross's Application for Post-Conviction Relief, Exh. 3 (Orleans Parish Assessor's Office Owner and Parcel Information dated 7/20/15), 7/24/15.

[119]St. Rec. Vol. 13 of 20, Trial Transcript (con't.), pp. 145-47, 11/17/11.

with other testimony and evidence does not establish that it was false or that the prosecution knew or believed that testimony to be false. *See Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002); *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (holding that conflicting testimony does not prove perjury but instead establishes a credibility question for the jury). The mere existence of a conflict in testimony and evidence does not make it false or perjured. *See United States v. Wall*, 389 F.3d 457, 473 (5th Cir. 2004), *cert. denied*, 544 U.S. 978, 125 S.Ct. 1874, 161 L.Ed.2d 730 (2005) ("Wall has not established that McDowell's testimony was actually false. He has merely shown that Ristau's testimony would establish a conflict in the testimony, a far cry from showing that it was 'actually false.' "). The evidence in this case presents nothing more than the kind of credibility conflict and dispute over the appropriate weight to be afforded to it that frequently occurs at trial and which is the jury's function to resolve.

Gross has failed to establish that the State violated his constitutional rights through the presentation of any false testimony from Rivere. The state courts' denial of relief of this claim was not contrary to, or an unreasonable application of federal law. Thus, Gross is not entitled to relief on this claim.

## XI.   Suppressed Transcript

Gross next claims that he was denied his right to appellate review in his direct appeal because the transcript of a November 14, 2011 hearing was not produced to be included in the appellate record. In support of this claim, Gross submits an affidavit from his trial attorney, Eddie Jordan, Jr., in which Jordan states that he recalled a pretrial hearing at which Gross's pro se motions

were denied and that "[t]o the best of my knowledge, information, and belief, this hearing, occurred on or about November 14, 2011."[120]

Gross raised this issue in his application for post-conviction relief. The Trial Court found no merit to the claim, finding that nothing in the record showed that a motion hearing or other proceeding was conducted on November 14, 2011.[121] The Louisiana Fifth Circuit relied on its previous finding on direct appeal that "nothing was taken in open court in this matter on November 14, 2011 and thus there is no transcript of proceedings from this date."[122] It noted that it had considered Jordan's affidavit but that the affidavit "does not change the fact that the court record reflects that there were no pretrial hearings conducted on November 14, 2011."[123] The Louisiana Supreme Court found Gross did not meet his post-conviction burden of proof that relief should be granted.[124]

To the extent Gross raises this issue as a violation of state law, his claim must fail. Federal habeas review may only consider constitutional violations and noncompliance with federal law as interpreted by the United States Supreme Court. *See Swarthout*, 562 U.S. at 219.

Gross does suggest that the failure to include the transcript of the November 14, 2011 hearing violated his Fifth Amendment right to due process. As a result, he has stated a cognizable claim for federal habeas review. *See Griffin v. Illinois*, 351 U.S. 12, 19–21, 76 S.Ct. 585, 100

---

[120]Rec. Doc. 4-9, p. 14.

[121]St. Rec. Vol. 7 of 20, Trial Court Order, p. 3,2/17/16.

[122]St. Rec. Vol. 7 of 20, 5th Cir. Opinion, 16-KH-159, pp. 5-6 (citing *State v. Gross*, 110 So.3d at 1190 and *State v. Gross*, 12-KH-747 (La. App. 5th Cir. Nov. 24, 2012) (unpublished)), 5/5/16. ·

[123]*Id.*, at p. 6.

[124] *State ex rel. Gross*, 227 So.3d at 282; St. Rec. Vol. 19 of 20, La. S. Ct. Order, 16-KH-1088, 9/29/17.

L.Ed. 891 (1956).  Gross claims the missing transcript denied him complete appellate review.  It is indisputably true that a criminal defendant has the right to adequate appellate and other review of his conviction based upon a sufficiently complete and accurate record.  *Mayer v. City of Chicago*, 404 U.S. 189, 198, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971).  However, the Supreme Court has not held that due process requires a verbatim transcript of the entire proceedings or that an incomplete record confers automatic entitlement to relief.  To prevail on a claim that the record was inadequate, a petitioner must prove that the missing portion of the transcript actually prejudiced his appeal in some manner.  *Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998) ("[B]arring a showing that the [failure to record bench conferences during trial] resulted in 'actual prejudice,' habeas relief is unwarranted." (citation omitted)); *see also Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir. 1987) (finding petitioner failed to show the absence of voir dire transcript prejudiced his appeal); *Bozeman v. Cain*, Civ. Action No. 09-8423, 2010 WL 2977393, at *4 (E.D. La. June 7, 2010), *report and recommendation adopted*, 2010 WL 2977402 (E.D. La. July 20, 2010) (finding that petitioner's claim failed when there was no actual prejudice resulting from the failure to transcript a bench conference).

In this case, Gross has not demonstrated that the state courts' rejection of this claim was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  There is no evidence that a hearing on the motions actually took place on November 14, 2011.  Attorney Jordan did not state with <u>certainty</u> that a hearing on the motions was held on November 14, 2011, and the other evidence of record confirms that there was no such hearing.  The minutes from November 14, 2011 simply reflect that the trial was continued until

the following day.[125]   The court reporter certified that nothing was taken in open court on November 14, 2011.[126]  Given this evidence, there was no transcript to produce and no violation of due process.

The state courts' decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent.  Thus, Gross is not entitled to federal habeas corpus relief on this claim.

## XII.   Effective Assistance of Counsel (Claim No. 13)

Gross alleges that he received ineffective assistance of counsel.  He claims his trial counsel should have filed motions contesting jurisdiction and the sufficiency of the indictment.  He further claims his trial counsel should have requested additional discovery, filed a motion to suppress Abreu's identification, and a motion to reopen the motion to suppress statement.  He claims his counsel failed to investigate the police reports and do his own crime scene analysis.  He also claims his counsel failed to make arrangements for jurors to view the crime scene.  Gross alleges that, when Rivere testified regarding the map showing the locations of the Francis Drive residence and Sanchez's burned vehicle, his counsel should have asked for a mistrial, asked the State to produce evidence that Gross lived at the residence, or asked the trial court to admonish the jury.  Gross further claims that his counsel was ineffective for failing to object to jury instructions.  Gross also faults his counsel for failing to raise the issue of corpus delicti.

Gross raised these arguments in his state application for post-conviction relief.  Upon its review pursuant to the standards set forth in *Strickland*, 466 U.S. at 668 and related state case law, the Trial Court found that Gross failed to show prejudice resulting from his counsel's failure to

---

[125]St. Rec. Vol. 2 of 20, Minute Entry, 11/14/11.

[126]St. Rec. Vol. 2 of 20, Court Reporter Certification, 9/17/12.

challenge jurisdiction.[127]  The Trial Court further found that motions to suppress identification and Gross's statement had been previously litigated.[128]  The Trial Court found that it had denied defense counsel's request for the jury to view the crime scene and that Gross's claim regarding counsel's investigation and preparation was purely speculative and conclusory.[129]  It found that the indictment met the requirements of La. Code Crim. P. art 464 and that counsel cross-examined Detective Rivera about the map.[130]  It found that Gross failed to show any prejudice resulting from his counsel's failure to object to the Trial Court informing the jury that he was charged with the armed robbery of both Abreu and Sanchez and that the felony murder instruction was correct.[131]  Finally, the Trial Court found that the claim that defense counsel performed deficiently in failing to raise the corpus delicti issue was meritless as Gross's statements were corroborated by Abreu's testimony.[132]  The Louisiana Fifth Circuit found Gross failed to provide both deficient performance and prejudice.[133]  In the last reasoned opinion, the Louisiana Supreme Court concluded that Gross failed to demonstrate that he received ineffective assistance of counsel under the *Strickland* standards.[134]

### A.  Standards of Review under *Strickland*

---

[127]St. Rec. Vol. 7 of 20, Trial Court Order, p. 4, 2/17/16.

[128]*Id.*

[129]*Id.*

[130]*Id.*

[131]*Id.* at pp. 4-5.

[132]*Id.*, at p.5.

[133]St. Rec. Vol. 7 of 20, 5th Cir. Order, 16-KH-159, p. 6-8, 5/5/16.

[134]*State ex rel. Gross*, 227 So. 3d at 282; St. Rec. Vol. 19 of 20, La. S. Ct. Order, 2016-KH-1088, 9/29/17.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*,

466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). This Court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236–37; *Clark v. Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000). Tactical decisions when supported by the

circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)).

### B. Pretrial Motions

Gross contends that attorney Jordan should have filed a motion to suppress the identification of him by Abreu, a motion for discovery, a motion to reopen the hearing on the motion to suppress his statements, a motion to quash the indictment as defective, and a motion to quash the indictment on jurisdictional grounds.

The record reflects that Gross was represented by four attorneys (Bruce Netterville, James Williams, Mark Nolting, and Jordan) from the time he was initially charged in 2008 through his sentencing in December 2011.[135]  On September 30, 2008, after an evidentiary hearing, the Trial Court denied a motion to suppress evidence, identification and statements filed by attorney Netterville in January 2008.[136]  The Trial Court also denied Gross's pro se motions to suppress evidence, identification, and statements.[137]  While those motions were litigated under the original case, the factual basis for the crimes charged remained the same.  There was only one identification procedure related to Gross, that is a six-person photographic line up shown to Abreu.  At a

---

[135] St. Rec. Vol. 1 of 20, Request for Appointment of Counsel, 2/14/11; Motion and Order to Enroll, 8/19/11;St. Rec. Vol. 6 of 20, State's Response to Willie Gross's Application for Post-Conviction Relief, Exh. 5 (Motion to Withdraw, 1/20/09), Exh. 6 (Motion to Enroll as Counsel, 1/6/09 and Order Enrolling Counsel, 1/23/09), Exh. 7 (Motion to Withdraw, 7/7/10 and Order, 7/9/10); Exh. 8 (Request for Appointment of Counsel, 7/26/10), Exh. 9 (Motion to Withdraw, 9/8/10), Ex. 10 (Motion and Order to Enroll, 8/30/10), 7/24/15.

[136]St. Rec. Vol. 14 of 20, Suppression Hearing Transcript, 9/28/08; St. Rec. Vol. 6 of 20, State's Response to Willie Gross's  Application for Post-Conviction Relief, Exh. 11 (Motion to Suppress the Evidence, Confession and Identification, 1/22/08), 7/24/15.

[137]St. Rec. Vol. 14 of 20, Hearing Transcript, 8/30/10; Hearing Transcript, pp. 5-6, 8/30/10.

deposition to perpetuate testimony for purposes of the motion to suppress identification taken on March 27, 2008, Abreu testified that she was shown a photographic line up and identified Gross as one of the perpetrators and that she was not threatened or made any promises to make the identification.[138]  At the suppression hearing, Bradberry testified that Abreu was shown a lineup and identified Gross.[139]  Additionally, Gross's admitted to being at the apartment on the evening of the incident.[140]  Gross has shown no reason why counsel should have repeated or pursued the filing of a meritless motion nor has he shown that the outcome would have been different had Jordan refiled such a motion.  *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also*, *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (" '[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.' ") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ); *Koch*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").

---

[138]St. Rec. Vol. 6 of 20, State's Response to Willie Gross's  Application for Post-Conviction Relief, Exh. 13, 7/24/15.

[139]St. Rec. Vol. 14 of 20, Hearing Transcript, pp. 17-18, 9/29/08.

[140]St. Rec. Vol. 12 of 20, Trial Transcript, pp. 98-100, 11/17/11.

There is no merit to Gross's claim that Jordan failed to request discovery. The record reflects that attorney Jordan filed a motion for bill of particulars and discovery and inspection.[141] The record further reflects that the prosecution provided discovery to the defense.[142]

Gross next contends that attorney Jordan should have moved to re-open the hearing related to the motion to suppress his statement based on the December 2010 disclosure of Williams's report. Gross argues that King's counsel was successful in moving to re-open the hearing and King's statement to Williams was ultimately suppressed. Gross raised the issue of re-opening the suppression hearing on appeal and the Louisiana Fifth Circuit found another hearing was not necessary and that Gross was not prejudiced.[143] Given the Louisiana Fifth Circuit's ruling, Gross has failed to show that Jordan was deficient in failing to move to re-open the hearing or any resulting prejudice.

Gross next contends Jordan should have filed motions to quash the indictment as defective and based on lack of subject matter jurisdiction due to improper venue. While Jordan did not file such motions, attorney Nolte adopted King's counsel's motion to quash based upon improper venue and jurisdiction.[144] The record does not reflect the ruling on that motion. Gross, however,

---

[141]St. Rec. Vol. 6 of 20, State's Response to Willie Gross's Application for Post-Conviction Relief, Exh. 14 (Motion for Bill of Particulars and Discovery and Inspections, 8/30/10), 7/24/15.

[142]St. Rec. Vol. 6 of 20, State's Response to Willie Gross's Application for Post-Conviction Relief, Exh. 15 (Notice of Discovery Provided to Defense, 8/27/10), Exh. 16 (Letter, 12/13/10), Exh. 17 (Letter, 11/30/10), Exh. 18 (Letter, 2/3/11), 7/24/15.

[143]*Gross*, 110 So. 3d at 1187; St. Rec. Vol. 3 of 20, 5th Cir. Opinion, 12-KA-73 C/W 12-KH-826, p. 22, 2/21/13.

[144]St. Rec. Vol. 11 of 20, Hearing Transcript, 8/1/11.

filed multiple pro se motions to quash the indictment based on insufficiency of the indictment and improper venue, which were denied.[145]

Under Louisiana law, "[t]he indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.  It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated."  La. Code Crim. Proc. art. 464.  The indictment in this case complied with Louisiana law.  The Bill of Indictment made reference to the date and place of the charged offenses, the victims, and the statutory provisions that Gross was charged with having violated.[146]  Counsel was not ineffective in failing to pursue a motion he likely determined to be futile or meritless, and which would not have been successful or changed the outcome of the trial.  *See Johnson*, 306 F.3d at 255; *Smith*, 907 F.2d at 585 n. 6.

In Louisiana, the issues of jurisdiction and venue are intertwined.  The Louisiana Constitution provides that the state district courts have exclusive original jurisdiction over felony cases.  La. Const. art. V, § 16(A)(2).  The state constitution likewise provides, as it did when Gross was charged, that "[e]very person charged with a crime ... is entitled to a speedy, public, and impartial trial *in the parish where the offense or an element of the offense occurred*, unless venue is changed in accordance with law."  La. Const. art. I, § 16 (emphasis added).  Therefore, in

---

[145]St. Rec. Vol. 2 of 20, Defendant's Motion to Quash Indictment, 11/7/11 (dated 11/2/11); Trial Court Order, undated (imaged 11/18/11); Motion to Quash Indictment, 11/7/11 (dated 11/2/11); Trial Court Order, undated (imaged 11/18/11); Defendant's Motion to Quash Indictment (Error Patent), 11/7/11 (dated 11/2/11); Trial Court Order, undated (imaged 11/18/11); Defendant's Motion to Quash Indictment (Defective Recitals), 11/14/11, (dated 11/5/11), Trial Court Order, undated (imaged 11/14/11).

[146]St. Rec. Vol. 1 of 20, Bill of Indictment, 2/10/11.

Louisiana, "[v]enue is jurisdictional in criminal cases." *State v. Burnett*, 768 So.2d 783, 789 (La.

App. 2d Cir. 2000); *see also*, La. Code Crim. P. art. 615.

Louisiana law provides as follows for determining venue where an offense occurred in

more than one place:

> A. All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.

La. Code Crim. P. art. 611(A).

In this case, Sanchez was kidnapped from his residence in Jefferson Parish. While his body

was ultimately found in Orleans Parish, the record demonstrates that the offense forming the basis

of the murder occurred in Jefferson Parish. Louisiana law therefore allowed Jefferson Parish to

be a proper venue for Gross's trial. *Vernon v. Cain*, Civ. Action No. 07–7608, 2011 WL 3268101at

*8-9 (E.D. La. Jun. 16, 2011) (Washington Parish was a proper venue under Louisiana law where

the kidnaping of the murder victim, which was the basis of the felony murder charge, occurred in

Washington Parish and her body was found in Texas), *report and recommendation adopted*, 2011

WL 3240757 (E.D. La. Aug. 28, 2011). Counsel did not act deficiently or prejudicially when he

failed to urge a meritless or baseless motion. *See Smith*, 907 F.2d 581, 585 n. 6; *see also*, *Koch*,

907 F.2d at 530 (5th Cir. 1990).

The state courts' denial of relief on these issues was not contrary to, or an unreasonable

application of, *Strickland*. Gross is not entitled to relief on this claim

### C. Crime Scene Investigation

Gross next contends that Jordan failed to conduct an "independent investigation" or produce "independent photographs" of the crime scene and failed to successfully urge at trial a motion to view the crime scene. He argues that the apartment parking lot was poorly lit and the positioning of Sanchez's vehicle made it impossible for Abreu to have seen Sanchez in the backseat of the vehicle between two assailants.[147] Gross argues that King's attorney took his own pictures and introduced them at King's trial to show the parking lot without lighting and the view from the upstairs window of the apartment.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." (citation omitted) *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07–6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

---

[147]Rec. Doc. 4-2, p. 172.

During trial, defense counsel utilized the State's photographs depicting the parking lot and the view from the window of the apartment in an attempt to demonstrate that Abreu could not have seen Sanchez in the back seat of the Expedition.[148]  Gross does not point to any *exculpatory* evidence which further investigation would have revealed to counsel.  He merely speculates that, had defense counsel taken his *own* photographs of the parking lot and showing the view from the second story window, those photographs would have demonstrated that Abreu could not have seen Sanchez's position in the vehicle.  Abreu's testimony that she saw Sanchez in the backseat between two assailants, however, was not the only evidence that Sanchez had been kidnapped.  There was also evidence that the apartment had been ransacked, the food Sanchez purchased was found spilled on the floor, and that the assailants left with Sanchez within seconds of him arriving at the apartment.  That evidence was consistent with Gross's statement to police that they forced Sanchez at gun point into the Expedition.  Gross also has not shown a reasonable probability that the outcome would have been different given his statement to police and the fact that King was convicted in spite of the introduction at his trial of defense photographs depicting the parking lot and view from the window.

Gross also contends his counsel unsuccessfully urged a motion to view the crime scene. He contends that his counsel failed to make any arrangements to transport the jurors or for the jurors to enter the apartment.

The record reflects that, on the first day of trial, attorney Jordan requested that the jury be permitted to view the apartment and parking lot.[149]  The Trial Court responded, "we're going to

---

[148]St. Rec. Vol. 11 of 20, Trial Transcript, pp. 43-45, 11/16/11; State of Louisiana's Exhibit List, 11/15/11; St. Rec. Vol. 12 of 20, Trial Transcript (con't), pp. 128-, 11/16/11.
[149]St. Rec. Vol. 11 of 20, Trial Transcript, p. 5, 11/15/11.

wait and see if the jury – if they feel it's necessary for them to view the area, then we'll make arrangements."[150]   Jordan renewed his request after Abreu completed her testimony.[151]   After hearing argument, the Trial Court denied the request, explaining that "I don't think anything could be added to this case by doing that.  I'm going to deny your request."[152]   It is clear from the Trial Court's ruling that the denial of the request was not based on Jordan's failure to make arrangements to transport the jury or for them to enter the apartment.  Gross does not demonstrate that the Trial Court would have ruled differently had Jordan taken such actions.

The state courts' denial of relief on these issues was not contrary to, or an unreasonable application of, *Strickland*.  Gross is not entitled to relief on these claims.

### D.  Detective Rivere's Testimony

Gross next faults Jordan's cross-examination of Detective Rivere regarding the map depicting the locations of Sanchez's burned vehicle and the Francis Drive residence.  While he contends that Jordan "expos[ed] the truth that the defendant didn't live at the residence,"[153] he contends that Jordan should have moved for a mistrial or to admonish the jury or requested the State produce documents demonstrating that Gross resided at the Francis Drive address.

The Trial Court rejected Gross's claim raised in his application for post-conviction relief, finding "[t]he record reflects that Jordan did cross-examine Det. Rivera regarding the map, and connecting petitioner to the residence on Francis Drive.  As previously noted in claim #4, defendant

---

[150]*Id.*

[151]St. Rec. Vol. 12 of 20, Trial Transcript (con't), pp. 180-82, 11/16/11.

[152]*Id.*, at p. 182.

[153]Rec. Doc. 4-2, p. 177.

acknowledged this on cross-examination by the State.  The court finds no merit to this claim."[154]
In the last reasoned opinion, the Louisiana Supreme Court found that Gross failed to meet the
*Strickland* standard.[155]

Detective Rivere testified regarding a computer generated map depicting the location of
Sanchez's vehicle and 4715 Francis Drive residence.[156]  Jordan conducted an extensive cross-
examination of Rivere regarding Gross's connection to the address.[157]  Rivere admitted that there
were no utility bills tying Gross to the residence and that he had no records showing that Gross
lived there.[158]  Rivere also admitted that he was not sure if there was any independent confirmation
that Gross lived at the address and that he had no firsthand knowledge that Gross even frequented
the address.[159]

Under Louisiana law, a mistrial is available when a remark or comment falls directly or
indirectly into one of four categories: "(1) Race, religion, color or national origin, if the remark or
comment is not material and relevant and might create prejudice against the defendant in the mind
of the jury; (2) Another crime committed or alleged to have been committed by the defendant as
to which evidence is not admissible; (3) The failure of the defendant to testify in his own defense;
or (4) The refusal of the judge to direct a verdict."  La. Code Crim. P. art. 770.  When a witness's

---

[154]St. Rec. Vol. 7 of 10, Trial Court Order, p. 4, 2/17/16.

[155]*State ex rel. Gross,* 227 So.3d at 282; St. Rec. Vol. 19 of 20, La. S. Ct. Order, 16-KH-1088, 9/29/17.

[156]St. Rec. Vol. 11 of 20, Trial Transcript, pp. 49-50, 11/15/11.

[157]*Id.*, at pp. 50-56.

[158]*Id.*, at pp. 51, 53.

[159]*Id.*

remark or comment falls outside of these categories, the State or the defense may request that the court admonish the jury to disregard an irrelevant, immaterial, or potentially prejudicial remark. La. Code Crim. P. art. 771. In the latter case, a mistrial may be granted only if the court is satisfied that an admonition is insufficient to assure a fair trial. *Id*.

In this case, Rivere's testimony did not fall within the categories of comments requiring an admonishment or a mistrial, and did not compel a request for an admonishment or a motion for mistrial by Gross's counsel. Counsel was not deficient in failing to move for an admonishment or a mistrial when Louisiana law did not support such a motion. *See Smith*, 907 F.2d at 585 n.6; *Koch*, 907 F.2d at 530.

As to the suggestion that Jordan should have asked the Trial Judge to tell the jury to disregard the evidence related to the map, this would have been prohibited by La. Code Crim. P. art. 772, which provides that "[t]he judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."

The state courts' denial of relief on these issues was not contrary to, or an unreasonable application of, *Strickland*. Gross is not entitled to relief on these claims.

### E.  Object to Jury Instructions

Gross next claims his counsel should have objected to the jury instructions. He contends Jordan should have objected to a jury instruction which stated that Gross was charged with the armed robbery of Maria Abreu <u>and</u> Javier Sanchez when the indictment only charged Gross with the armed robbery of Maria Abreu. He also claims counsel should have objected to the Trial Court reading to the jury the entire "felony murder" portion of La. Rev. Stat. § 14:30.1 instead of just the

part relating to second degree kidnapping.  He claims that the instruction led to the jury being confused as to an essential element of the felony murder offense.

The Trial Court found that, while Jordan should have objected to the instruction regarding armed robbery, Gross failed to show any resulting prejudice.  It found that the jury was properly instructed as to the charge of felony murder and there was "no deficiency in counsel's performance, as the court read verbatim the statute which defendant was charged, which was a correct statement of law" and no prejudice.[160]  The Louisiana Fifth Circuit agreed with the Trial Court's findings.[161] The Louisiana Supreme Court found Gross failed to meet his burden under *Strickland*.[162]

Gross challenged the jury charges in his application for post-conviction relief, and, as outlined above, the Louisiana Supreme Court rejected the claim as procedurally barred.[163] Nevertheless, in order to determine whether counsel should have objected, the Court must consider the propriety of the charges.

In order to determine whether the language of a jury charge amounts to a constitutional error, the Court must determine whether the instructions, when read as a whole, relieved the State of its burden to prove each element of the crime beyond a reasonable doubt in violation of the principles set forth in *In re Winship*, 397 U.S. 358 (1970).  *See Francis v. Franklin*, 471 U.S. 307, (1985).  In doing so, the Court must consider whether the specific language involved creates a

---

[160]St. Rec. Vol. 7 of 20, Trial Court Order, pp. 4-5, 2/17/16.

[161]St. Rec. Vol. 7 of 20, 5th Cir. Opinion, 16-KH-159, pp. 7-8, 5/5/16.

[162] *State ex rel. Gross*, 227 So.3d at 282; St. Rec. Vol. 19 of 20, La. S. Ct. Order, 16-KH-1088, 9/29/17.

[163]*Gross*, 171 So.3d at 924;St. Rec. Vol. 18 of 20, La. S. Ct. Order, 14-KP-2640, 6/1/15.

constitutionally objectionable "mandatory presumption" or "merely a permissive inference" on an essential element of the crime. *Franklin*, 471 U.S. at 314.

The mere use of an erroneous instruction to the jury is not a basis for federal habeas relief. *Estelle*, 502 U.S. at 62. Instead, the Court must focus on "whether the ailing instruction by itself so infected the entire trial process that the resulting conviction violates due process." *Id.* at 72 (citations omitted). In examining the challenged instruction, the Court does not look at it in "artificial isolation," but must consider it in the "context of the instructions as a whole and the trial record." *Id.* Finally, when there is a question as to whether a jury instruction is ambiguous and violates due process by relieving the State of the burden of proof of an element of a crime, the question before the Court is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id.* (citations omitted); *accord Flowers v. Blackburn*, 779 F.2d 1115 (5th Cir. 1986).

If the charge amounts to error, the Supreme Court has held that the error is subject to a harmless error analysis finding jury charge challenges to be trial error and not structural error. *California v. Roy*, 519 U.S. 2, 5–6 (1996) (citing *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The applicable test is whether the instruction "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *Roy*, 519 U.S. at 6; *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Upon application, when a federal judge in a habeas proceeding is in grave doubt about whether trial error of federal constitutional law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless, and petitioner must be granted relief. *O'Neal*, 513 U.S. at 436. Therefore, this Court on habeas review is required to determine whether

the armed robbery and second degree murder charges given in Gross's case amounted to constitutional error. Only if it did would the Court need to consider whether the error was harmless.

At the close of trial, the Trial Court instructed the jury as follows:

> Second degree murder is the killing of a human being, one, when the offender has a specific intent to kill or inflict great bodily harm, or two, when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, assault by a drive-by shooting, armed robbery, first degree robbery, second degree robbery, simple robbery, cruelty to juveniles, terrorism, even though he had no specific intent to kill or to inflict great bodily harm.[164]

With regard to the armed robbery charge, jury was charged that "[t]he Defendant is charged with the armed robbery of Javier Sanchez and Maria Abreu."[165]

Under Louisiana law, the murder instruction provided is an accurate definition of felony murder and was verbatim from the statute. La. Rev. Stat. § 14:30.1; *State v. Smith*, 793 So.2d 1199, 2001 WL 744000, at *29-30 (La. 2001) (finding no merit to defendant's claim relating to the trial court's felony murder instruction which included all of the felonies enumerated in the statute, some of which could not be supported by the evidence), *cert. denied*, 535 U.S. 937 (2002). Gross contends, however, because the jury was charged that he committed an armed robbery of both Abreu and Sanchez, the jury may have found that the underlying felony was the armed robbery of Sanchez. The portion of the armed robbery instructions that charged Gross with the armed robbery of Sanchez as well as Abreu was erroneous and defense counsel should have

---

[164]St. Rec. Vol. 2 of 20, General Criminal Jury Charges, pp. 9-10, 11/22/11; St. Rec. Vol. 13 of 20,Trial Transcript, p. 194, 11/17/11.

[165]*Id.*, at p. 12; St. Rec. Vol. 13 of 20,Trial Transcript, p. 195, 11/17/11.

objected.  Gross has not established that the error was of such magnitude as to undermine confidence in the jury's verdict and to overcome the deference afforded to the state court determination that Gross did not show prejudice as a result of his counsel's failure to object.

The indictment, which was read to the jury[166], charged Gross with the second degree murder committed during the commission of Sanchez's kidnapping and the armed robbery of Abreu.  Gross does not contest that there was sufficient evidence demonstrating that he committed the armed robbery of Abreu and the evidence overwhelmingly established that he did so.  As discussed in the Court's analysis of the sufficiency of the evidence, the record, which included Gross's admission that he, King and the third perpetrator forced Sanchez into the vehicle at gunpoint and drove to New Orleans Parish, supports a finding that Sanchez's murder occurred during the commission of a kidnapping.  While Gross speculates that the jury could have found the underlying felony to be the armed robbery of Sanchez, such speculation is not enough to create grave doubt in the mind of the Court regarding the validity of the jury's verdict.  It is clear from the record that the State's theory was that the predicate felony was Sanchez's kidnapping.  Based on the reading of the indictment and the questioning of witnesses, the jury was well aware that the State's theory was that Gross kidnapped Sanchez and that the kidnapping, rather than any armed robbery of Sanchez, formed the basis of the felony murder charge.

While the charge was erroneous, there is no showing of a reasonable likelihood that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637–38.  "If an error is shown to be harmless, then the error cannot satisfy the prejudice

---

[166]St. Rec. Vol. 2 of 20, Minutes, 11/15/11.

prong of *Strickland*." *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985). Given that the charge was harmless error, Gross cannot establish that counsel's failure to object to the charge was prejudicial under *Strickland*. *Id*.; *Riggins v. Butler*, 705 F.Supp. 1205, 1212 (E.D. La. 1989).

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law. Gross is not entitled to relief on this issue.

### F. Corpus delicti

As his final claim of ineffective assistance of counsel Gross faults attorney Jordan for failing to argue that the State failed to prove the corpus delicti of felony-murder, i.e., the commission of second degree kidnaping. Gross contends that his confession could not be used as the sole means to support his conviction and that Abreu's testimony was insufficient to prove that he and the other perpetrators kidnapped Sanchez prior to his murder.

The Trial Court found Gross's statements were corroborated by Abreu's testimony at trial and there was no deficiency in counsel's performance or resulting prejudice.[167] The Louisiana Fifth Circuit agreed and noted that it had previously considered the sufficiency of the evidence and found it was sufficient to sustain Gross' conviction for second degree murder.[168] The Louisiana Supreme Court found Gross failed to meet his burden under *Strickland*.[169]

Louisiana's corpus delicti rule requires that there is evidence other than the accused's confession that a criminal act was committed by someone. *State v. Martin*, 645 So.2d 190, 195 (La. 1994); *State v. Chism*, 3 So.3d 41, 49 (La. App. 5th Cir. 2008). To satisfy the corpus delicti

---

[167]St. Rec. Vol. 7 of 20, Trial Court Order, p. 5, 2/17/16.

[168] St. Rec. Vol. 7 of 20, 5th Cir. Opinion, 16-KH-159, p. 8, 5/5/15.

[169] *State ex rel. Gross*, 227 So.3d at 282; St. Rec. Vol. 19 of 20, La. S. Ct. Order, 16-KH-1088, 9/29/17.

rule, the State must prove the injury specified in the crime occurred and that the injury was caused by someone's criminal activity involved in the charged crime. *Chism*, 3 So. 3d at 49 (citing *State v. Thibodeaux,* 750 So.2d 916, 927 (La. 1999)). " 'Corroborating evidence need only show the essential injury involved in the charged crime (e.g., death caused by criminal activity in a murder charge) in order to establish the reliability of the inculpatory statements of the accused; the corroborating evidence need not show every element in the definition of the charged crime (e.g., the predicate felony in a felony murder).' " *Id*. at 49-50 (citing *Martin*, 645 So.2d at 195).

In this case, Gross does not contest that the evidence demonstrated that Sanchez died as the result of a gunshot wound. Sanchez's kidnapping prior to his murder was established by evidence independent of Gross's inculpatory statements. Abreu testified that she heard something drop to the floor when Sanchez returned and, seconds later, saw the Expedition drive off with Sanchez in the back seat between two of the perpetrators. Her testimony corroborated Gross's statement that they forced Sanchez at gunpoint into the back seat of the Expedition.

Gross was not convicted on the basis of his statements alone. Evidence independent of his statements established that Sanchez was kidnapped prior to his murder. As a result, Gross fails to demonstrate deficient performance by counsel or resulting prejudice.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law. Gross is not entitled to relief on this issue.

## X.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Gross's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[170]

New Orleans, Louisiana, this  28th  day of December, 2018.

_____

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[170]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.